**FILED**

SEP 2 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GISELA VON MUHLENBROCK          :
15301 Pine Orchard Drive # 1 J   :
Silver Spring, MD 20906          :
                                 :
Plaintiff                        :
                                 :
        v.                       :
                                 :
JAMES BILLINGTON                 :
Librarian of Congress            :
The Library of Congress          :
1st and Independence Avenue SE   :
Washington, D.C. 20001           :
                                 :
Defendant.                       :
                                 :
Serve:                           :
Kenneth Wainstein                :
United States Attorney for the   :
District of Columbia             :
United States Courthouse         :
Washington, D.C. 20001           :

CASE NUMBER  1:05CV01921

JUDGE: Henry H. Kennedy

DECK TYPE: Employment Discrimination

DATE STAMP: 09/29/2005

COMPLAINT OF DISCRIMINATION IN EMPLOYMENT

I.    NATURE OF CLAIM

1. This action seeks for plaintiff to be hired into a Foreign Law Specialist position,

recover back pay, compensatory damages, compensation for pain and suffering and loss of

reputation and attorney fees and expenses based on violations of Title VII of the Civil Rights Act

of 1964, as amended, and of a CONSENT DECREE, SETTLEMENT AGREEMENT AND

STIPULATION OF DISMISSAL entered into January 10, 1986 concerning a complaint filed in

The United States District Court for the District of Columbia, *Nguyen et al. v. Boorstin,* Civil

Action No. 85-1786.

2. This action seeks declaratory, injunctive and other equitable relief for violation of the

cited CONSENT DECREE and Title VII of the Civil Rights Act of 1964, that in its provisions

on retaliation, 42 U.S.C. 2000e-3(a) states:

> "It shall be unlawful employment practice for an employer to discriminate against
> any of his employees...because he has opposed any practice by this subchapter, or
> he has made a charge, testified, assisted, or participated in any manner in an investi-
> gation, proceeding, or hearing under this subchapter."

The CONSENT DECREE includes a final clause :

> "Defendant and his agents, employees and representatives will not discriminate or take
> any action of retaliation or reprisal against any of the plaintiffs in violation of Title VII
> of the Civil Rights Act of 1964, as amended, (42 U.S.C. 2000e et seq.,... The General
> Counsel of the Library of Congress shall personally explain to each of the plaintiffs'
> division chiefs and to the Law Librarian of Congress the anti-retaliation requirements
> of the aforesaid federal statutes."

## II.    JURISDICTION

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331, 1337,1343 (3),

2201, 29 U.S.C. S. 216 (b) and 42 U.S.C. S 2000-5f. The amount in controversy exceeds $

10,000 exclusive of interests and costs. This suit is authorized and instituted pursuant to Title

VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. S 2000e-16 (c).

## III.    PARTY

4. Plaintiff Gisela von Muhlenbrock is a native of Chile and a U.S. citizen. She was

employed at the Law Library of the Library of Congress in Washington D.C. as a Foreign law

Specialist, GS 11 in 1981. After the law suit she was promoted up to the GS 14-5 level. In

November 1989 she resigned because of health reasons. She had traveled to Santiago, Chile in

August of that year to attend the wedding of her daughter and had an severe accident affecting her spinal cord when riding a horse. Her recovery required a long rehabilitation treatment according to physicians who prescribed not to undertake traveling back to the U.S. until all risk of a relapse was assured. Gisela von Muhlenbrock had to withdraw her federal pension funds in order to pay her medical bills, her rehabilitation therapists and pay the expenses of her staying in Santiago. She resigned because there were only two lawyers in the Hispanic Division, which had a high demand of work by the Congress, herself and the chief Rubens Medina, who had been a defendant in her law suit. She sent a letter of resignation to Dr. Medina and a medical certification, however that information was not included in the corresponding Personnel Action Notification.

5.   Defendant James Billington, is the Librarian of Congress, and in such capacity is the chief executive officer of the agency. He is sued in his official capacity. The Library of Congress is an employer within the scope of Title VII of the Civil Rights Act of 1964, as amended, and the Fair Labor Standard Act of 1938, as amended.

IV.  STATEMENT OF CLAIMS

6.   The Law Library is one of the major operative departments of the Library of Congress. It is directed by the Law Librarian, currently Dr Rubens Medina, who at all relevant times has the final authority for all personnel matters in the Law Library of Congress affecting plaintiff, including hiring and promotions.

7.   The Law Library has a Directorate of Research, a Research and Reference Unit and two Divisions, Eastern and Western Law, the latter includes the former Hispanic Law Division. Each division is responsible for several legal collections and jurisdictions.

8.  Each division of the Law Library is staffed by professionals who report to the division chief and who, as is the plaintiff, are classified as Foreign Law Specialists GS 095.

9.  All non-supervisory Foreign Law Specialists positions in the Law Library of the Library of Congress are career ladder positions with non-competitive promotion to the GS 15 level.

10.  All non-supervisory Foreign Law Specialists in the Law Library are classified according to the same Office of Personnel Management Classification Standard .

11.  All the non- supervisory Foreign Law Specialists work to the same position descriptions.

Plaintiff Gisela von Muhlenbrock Title VII, retaliatory non selections and hostile environment claim.

12.  Although plaintiff worked in a retaliatory and hostile environment since 1982 when she filed her sexual harassing complaint then followed by the law suit and settlement, she loved her work and coped. Therefore, having recovered from her injuries in 1991, and still in Santiago, Chile, when she was advised by a fried that her former position was posted, she called Dr Medina January 14, 1991 and asked him to fax her an application. He refused saying that the position had been filled temporarily but that in the future a Foreign Law Specialist and the Assistant Chief positions would be opened once a freeze would be lifted..(Lost phone bill, call made from home)). The tone and answers were contradictory and not trustworthy so that Ms von Muhlenbrock, who had been Law Library Steward for Local 2910 of AFSCME since 1985, wrote to Mr James Billington, the Librarian of Congress, to verify the accuracy of the information given in the conversation in January of 1991, but she got no answer. Then she asked the assistance of a congressional office, Congressman Bill Green, and received a letter from Linda

Page 4

Cartwrigth in this regard dated January 28, 1992.

13.  But Gisela von Muhlenbrock persisted and she wrote to Dr Medina and Ms Katty Price, then Law Librarian, about her interest to be informed of those future vacancies he had mentioned.  In Chile, at that time there was no Internet available and she also called  Dr Medina on February 27, 1991 to ask for the other postings he had communicated  and obtained a negative response.

14.  The Librarian of Congress, Mr Billington answered March 30, 1992.  The answer indicated  that Dr Medina had not told the truth in refusing to fax the application in January because the posting extended from " January 15,1991 until February 14, 1991".  He also stated that Gisela von Muhlenbrock had failed to file an EEO complaint within the term of Library of Congress Regulations while in Santiago.

14.  Ms. Gisela von Muhlenbrock responded to the Librarian of Congress to act on the retaliatory actions of Dr Medina on May 4, 1992. This time the answer was provided by a letter from Mr Ben Benitez, then Director of Human Resources, dated June 2, 1992. He states that "Because of budgetary uncertainties, the Library has imposed a limited hiring freeze"... and that "Potential applicants for vacancies at the Library must assume responsibility during the period they are open". Thus, in 1992, after sixteen months, the Librarian of Congress and the Director of Human Resources had willfully ignored that Gisela von Muhlenbrock was abroad and depended completely on information from the retaliator himself. During all this time Gisela von Muhlenbrock was never contacted to investigate her claim of have been retaliated in spite of the provisions of the Consent Decree and its anti-retaliation clause founded in Title VII of the Civil Rights Act of 1964, as amended..

16.   In January 2003, The Library of Congress  posted in its website to apply online a Foreign

Legal Specialist position as vacancy announcement 020307 : "This position is located in the

Western Law Division of the Law Library and related to the laws of Spanish and Portuguese

language countries, and other jurisdictions".  This position was to be filled under new rules and

procedures as a result of the class action law suit filed by Howard R.L.Cook, et al., Plaintiffs v.

James H. Billington.  The case is captioned Cook v. Billington, C.A. No. 82-0400 (NHJ/PJA)

and contains recommendations by the Judge to implement a new merit and equity based

selection and promotion procedure.   The date of the Cook settlement agreement is August 2,

1994. Now selection and promotions are to be conducted under the  LIBRARY OF CONGRESS

MERIT SELECTION AND PROMOTION PLAN of June 19, 2001 (LCMSAPP) and applied to

AFSCME Local 2910 (Guild) and to the professional and administrative positions in the

Congressional Research Service Employees Association, IFPTE Local 75 bargaining units.

17.   Gisela von Muhlenbrock applied online January 19, 2003 filling the Knowledge, Skills

and Abilities (KSA)s questions and made a print of her application.  This self rating system

contains the following note:

*The following statements are designed to measure your experience and training in
relation to the requirements of the job.  Typically this experience is in or related to the job to be
filled.  For each statement, indicate what description best presents your highest level of
experience.  At the end of this application, you will be required to certify that your answers are
truthful and that the accuracy of your answers will be verified as you go further in the process.
So, please be honest.*

Supported by her seniority level she adjudicated herself the highest ratings.

18.   On May 5, 2003 Gisela von Muhlenbrock received an email stating that she had not been

selected.  She requested via email  Staffing Specialist Billie Nichols to provide her with her score

She received an answer on July 9, 2003. Her score had been 96, but a cutoff for interview established by the Selecting Official had been 97.

19. This time, Gisela von Muhlenbrock filed an informal complaint of discrimination of reprisal on July 17, 2003 , EEO CASE No. 03-38. The Library of Congress conducted first an investigation by EEO Counselor Ms Danee Gaines and a second one by Mr Paul Greenberg. The Conclusion of the Chief of the EEO Complaints Office of the Library of Congress Dr Ricardo Grijalva was that said investigations did not support a finding that she was discriminated against in reprisal for having engaged in prior protected activity. After denying a motion to reconsider his decision, Gisela von Muhlenbrock was advised of her right to file a civil action in the appropriate U.S. District Court within the legal time limits. His letter was forwarded via Regular and Registered mail on May 26, 2005.

20.  However, the affidavits and exhibits provided by the investigators contracted by the Library of Congress revealed that current rules in force and procedures were not followed during the selection process by the selecting panel and the affidavits contain untruthful statements as also does the application of the candidate chosen. These facts are the following:

20 A.  The defense of the Library of Congress has been that no reprisal took place because  nobody in the Selection Panel knew that Gisela von Muhlenbrock had applied and the referral list had been made according to the rules of the LCMSAPP.

.However in the Affidavit of Kersi Shroff, who presided the Selection Panel, in page 3, last paragraph of question 4 he states:

> Ms Nichols provided the Selecting Panel with the total number of applicants who met the minimal qualifications, and also the raw scores of the each of the qualified applicants. This list, however, did not include the names of any of the applicants-just their scores.

The Panel then decided to interview the top 10 candidates.

In the Affidavit of Billie Nichols, a Personnel Staffing Specialist in the Human Resources (HR)

Department, in page 8, she states in paragraph 3:

> In connection with the number of applicants referred for interviews, the Library Merit
> Selection and Promotion Plan states that a minimum of 7 candidates should be referred,
> plus the persons who were "tied" at the cutoff score. The HR Specialist provides the
> scoring breakdown for all the candidates to the Selection Official, who sets the cutoff
> score. I am providing to the Investigator a copy of my email dated January 30, 2003 to
> the Selecting Officer for the Foreign Law Specialist position, Kersi B. Shroff, giving him
> the breakdown of the applicants for the position.
>
> With regard to the list of 10 candidates who were interviewed for the Foreign Law
> Specialist job, this list was generated automatically by the system. In this instance, the
> Selecting Official advised me that the cut-off score would be 97. After I entered the 97
> score, the system automatically generated the list of 10 candidates who met the score. I
> have provided the Investigator with the list of candidates to be interviewed for the
> Foreign Law Specialist position dated February 11, 2003. This list was generated by the
> system automatically.

The fact is that the LCMSAPP provides in D. RATING AND RANKING PHASE, 1,.d. "The

automated system generates the top seven candidates plus tied scores" and in ii) "The list of

applicants referred shall be in alphabetical order with no reference to the automated system

results".

In the Applicant Scoring Breakdown for Vacancy # 020307 prepared by Billie Nichols on

January 30, 2003 the 7th top score is 94 if the tied up scores are included (clusters). That list

contains the names of 68 qualified candidates. In the list of 10 candidates the names are also

included. Furthermore, in the Level 2 AA Review Form of January 24, 2003 in additional RNO

Data, candidate No. 9 is identified as a male and No.10 as female, Hispanic o Latino, both have a

score of 96. This is the fifth list that included the 96 score and may include any AA/SPO

additions in compliance with letter d.. of the above cited section of the LCMSAPP. The

LCMSAPP does not contain any rule that allows to establish cutoff scores to reduce the pool of applicants to be interviewed who have qualified within the seven higher scores including the tied scores.

The members of the Selection Panel had seen Gisela von Muhlenbrock's name in the first list generated by the automated system. Kersi Shroff lied about it. The seven top ratings required to interview 34 qualified candidates because of the inclusion of the tied scores but the unlawful cutoff score was 97, to be able to interview only ten applicants and excluded Gisela von Muhlenbrock arbitrarily.

20 B.   The LCMSAPP establishes in B. JOB ANALYSIS PHASE, a..Final Applicant Questionnaire, I) that the Panel review the OPM Qualification Standards for the series to determine any licensing or certification requirements and any positive education requirements. Also in C. ANNOUNCEMENT PHASE, 9. Method of Applying. I ) it is required that " All scanned material will be checked by Human Resources for its accuracy". In the Vacancy Announcement No. 020307 it is stated in the section "Notes"that "For applicants certified to practice law in any of these countries, evidence of certification is to be provided at the interview". Additionally, in the section "How to Apply", it is determined that candidates referred for interview for a position based on any educational requirements listed in the vacancy announcement must present a legible copy of their college transcripts when interviewed. In revising the documents provided by the investigators and the Structured Interview Guide record no evidence was found that the selected candidate Gustavo Guerra was requested by the Panel the certification and the transcripts required and/or that he provided them.

Furthermore, and based on Mr Gustavo Guerra's application one may conclude that his Work Experience is greatly overstated . Gustavo Guerra was an intern for only two months at the U.S. Federal Communication Commission where it is doubtful he could have "drafted responses to policy inquiries from foreign regulators". In Mexico, from October 15, 1995 to July 14, 2001 he could not have "drafted the courts final opinions", a fact more doubtful if considered that these actions are illegal under Mexican law and Courts of Appeals consist of panels of justices. From January 5, 1993 to September 29,1995 he could not have "drafted Court's final opinions" if he still was a law student. But his Educational Background is more questionable. If he graduated from Law School and joined the Mexican Bar, while he was drafting opinions for Courts of Appeals until 2001, he also was studying for a Master of Judicial Specialization at the Federal Judicial Institute (Sonora campus) graduating in 2001. That degree does not exist in Mexico. The Federal Judicial Institute is the training school of the Judiciary and offers a Judicial Specialization course once a year. It lasts 400 hours (50 days).

Therefore the facts demonstrate that the rules governing the merit selection process were not complied by the Human Resources Department that had to verify the accuracy of the application of Gustavo Guerra, that the Panel did not ask the required documentation and Gustavo Guerra obtained a high rating score by being untruthful.

20 C.  Dr Tao-Tia Hsia, the former chief of the Far Eastern Law Division was serving in the Selection Panel. He had discriminated against Phuong Khanh Thi Nguyen, a plaintiff in the Complaint of Discrimination in Employment, Civil Action No. 85-1786. He refused to talk to Gisela von Muhlenbrock in her capacity of Law Library Steward and in the 90's retaliated against Phuong Khanh Thi Nguyen, who complained and was transferred to the Research and Reference

Page 10

Unit as a remedy. Knowing of the role of Gisela von Muhlenbrock in the Civil Action suit he cannot be considered a neutral member in the Selection Panel, specially if he knew he would retire soon, thus had available a blanket of impunity.

20 D.  Gisela von Muhlenbrock's printed application, a copy made at the end of the online procedure dated January 19, 2003 is different in the self-rating KSA's choices and design than the one provided by the Library of Congress during the investigations, the latter does not have the same choices of her self-rating of KSAs and thus affected her score negatively.

20 E.  Finally, the fact is that plaintiff Gisela von Muhlenbrock has tried to be hired as a Foreign Law Specialist in the Law Library, where she had worked before, two times under the circumstances described above.

V.    PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests this Court to grant her relief as follows:

1. Enter a judgment declaring that the acts and practices complained of herein with respect to plaintiff Gisela von Muhlenbrock are in violation of Title VII of the Civil Rights Act of 1964 and of the Consent Decree, Settlement Agreement and Stipulation of Dismissal of January 10, 1986.

2. Enter a judgment against defendant and in favor of Gisela von Muhlenbrock ordering that she be hired as a Senior Foreign Law Specialist, GS 14-5.

3. Enter a judgment against defendant and in favor of Gisela von Muhlenbrock to recover the amount of back pay together with interests, with proper adjustment of all pension and other benefits.

4. Enter a judgment against defendant and in favor of Gisela von Muhlenbrock for

compensatory damages.

5. Enter an injunction against defendant enjoining and restraining him, his agents and employees from further discrimination, retaliation or reprisals against plaintiff Gisela von Muhlenbrock by reason of plaintiff exercise  rights protected by Title VII of the Civil Rights Act of 1964, as amended, including treating plaintiff differently from other GS 14-5 Senior Foreign Law Specialists with respect of work assignments, opportunities to gain professional experience and recognition and other benefits and conditions of employment.

6.  Enter judgment against defendant, in favor of Gisela von Muhlenbrock, awarding reasonable attorneys fees and costs.

7.  Grant other and further relief to plaintiff Gisela von Muhlenbrock as the Court deems just and proper considering her pain and suffering and loss of reputation.

Respectfully submitted.

GISELA VON MUHLENBROCK
15301 Pine Orchard Dr # 1.J
Silver Spring, MD 20906
(301) 598-4701
giselavm@verizon.net

P.S

Complaint was filed August 22, 2005.  Leave to file without prepayment costs was denied September 19, 2005

Page 12

THE LIBRARY OF CONGRESS
WASHINGTON D.C. 20540

EQUAL EMPLOYMENT OPPORTUNITY
COMPLAINTS OFFICE

May  26, 2005

Ms. Gisela Von Muhlenbrock
Hernando de Aguirre
Santiago 6650360, Chile

Ms. Francine K. Weiss, Esq.
Law Office of Kalijarvi, Chuzi & Newman, P.C.
1901 L. Street, N.W., Suite 610
Washington, D.C.  20036

Subject:  Gisela Von Muhlenbrock
          EEO Case No. 03-38
          Request for Reconsideration

Dear Ms. Weiss:

The Equal Employment Opportunity Complaints Office (EEOCO) is in receipt of your
Request for Reconsideration dated May 23, 2005 appealing my decision on the above-
referenced EEO complaint.

In your letter dated May 23, 2005, you disagreed that Ms. Von Muhlenbrock had not
provided evidence that an adverse action followed her protected activity as a result of her
non-selection. You further stated that Dr. Medina retaliated against Ms. Von
Muhlenbrock after her lawsuit was settled and did not have an opportunity to retaliate
against her until she sought to be rehired. The record reflects that she last participated in
EEO activity as a plaintiff in the *Nguyen et al. v. Boorstin class action, which was* settled
and resulted in the consent decree in 1986. Ms. Von Muhlenbrock sought to be rehired in
2003, when the Library posted their on-line vacancy announcement for the Foreign Law
Specialist position for which she applied.  Almost seventeen (17) years have elapsed
since she participated in EEO activity.

As you are aware, Ms. Von Muhlenbrock must demonstrate that a nexus exists between
the protected activity and the adverse action and establish that a causal connection exists
between the EEO activity and the adverse action (*i.e.*, the action in question followed the
protected activity within such a period of time that a retaliatory motivation may be
inferred).  Generally, the maximum amount of time between the filing of a complaint and
adverse action that is sufficient to find retaliation is one year. *Patton v. Dalton*, 1996 WL
375816, *3 (1996); *Stephan v. Rubin*, 1996 WL 528911, *3 (1996); *Crockett v. Runyon*,
1996 WL 28651, *5 (1996). Thus, 17 years is too attenuated a time period to infer a
retaliatory motive for an adverse action.

**FILED**

05 1921

SEP 2 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2

The required causal connection may be shown by evidence that the adverse action followed the protected activity within such a period of time and in such a manner that a reprisal motive is inferred. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2nd Cir. 1980). The case which best clarifies the "close in time" principle is *Hochstadt v. Worcester Foundation for Experimental Biology,* 425 F. Supp. 318, 324 (D. Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976).

Ms. Von Muhlenbrock has exceeded the maximum amount of time between the filing of a complaint and adverse action that is sufficient to find retaliation under the standards enunciated by *Patton v. Dalton and Stephan v. Rubin (cited above).* As a result, she has failed to demonstrate that a causal connection exists between the prior EEO activity which occurred seventeen years ago and the adverse action.

You further contend that in 1991 Ms. Von Muhlenbrock asked Dr. Medina to fax her an application for what she heard was a vacancy announcement and, that Dr. Medina failed to do so. At that time, the SF-171, Application for Federal Employment, was a multi-page application consisting of 5 pages, which the Office of Personnel Management (OPM) and the Human Resource's Office of Library of Congress provided to any applicant requesting such forms. The forms became obsolete on December 31, 1994, when the Office of Management and Budget (OMB) approval for the forms expired. The fact that Dr. Medina failed to fax her a copy of this application to apply for future positions did not prevent Ms. Von Muhlenbrock from obtaining the SF-171 from the Human Resource's Office at the Library or from the Office of Personnel Management (OPM). Your contention that she was retaliated against because Dr. Medina failed to fax her an application for employment is not credible and without merit.

You have also alleged that Dr. Medina informed Ms. Von Muhlenbrock that he would consider her for future openings. In order for Ms. Von Muhlenbrock to have been considered for future opening, she would have been required to submit her SF-171 (Application for Federal Employment) and compete for these positions along with other applicants. Ms. Von Muhlenbrock was appointed to the position of Foreign Law Specialist in 1981 and resigned in November 1989. She was a seasoned federal government employee who was cognizant of the application process required for federal employment. There is no evidence in the record to reflect that Ms. Von Muhlenbrock even applied for any position other than the Foreign Law Specialist position for which she applied in 2003, now at issue in this case. Therefore, your contention that she was retaliated against because Dr. Medina did not consider her for future employment is without merit.

Finally, in your request for consideration you have contended that Ms. Von Muhlenbrock was retaliated against when she was not selected for a position. You stated:

> "Every time such a vacancy occurred, Dr. Medina made sure that Ms. Von Muhlenbrock was not selected in retaliation for her protected activity."

3

There is no evidence in the record to reflect that Ms. Von Muhlenbrock had applied for any other positions other than the position at issue in this pending complaint. If in fact she had applied and was denied such positions because of Dr. Medina's alleged actions, she would have had the right to pursue an EEO complaint questioning the employment practices of Dr. Medina.

Finally, you have alleged that Ms. Von Muhlenbrock was able to demonstrate pretext because the interpretation offered by the Library of Congress is not credible. By her own admission Ms. Von Muhlenbrock stated: "I checked-off the highest-ranking criterion as they were listed on the application". However, Ms. Von Muhlenbrock could not have known this information and assumed that the criterion she selected were the highest-ranking criterion.

As a result of a class action suit filed against the Library (*Cook* v. *The Library of Congress*) the Library negotiated a change in its merit selection process, which finally resulted in the application of a modified AVUE system. The date of the Cook settlement agreement was August 2, 1994. As a part of the selttlement agreement in the Cook Class suit, the Library was required to develop a modified system to eliminate any human interference into the ranking of the applicants after submitting their responses to the KSA's and submission of the employment application. Ms. Von Muhlenbrock received a score of 96 as a result of mis-reading the application instructions. Your assertion that a fact finder could believe that the Library jumbled the application answers in order to give Ms. Von Muhlenbrock a lower score and thereby prevent her from being interviewed is without merit. Her score was completed by a pre-programmed computerized computation based on her responses to each KSA with a predetermined cut-off score. There was no human involvement in the score she received.

You further stated that you were not provided the applications of the applicants to see if their answers were similarly jumbled. In the appeal rights provided to you in my May 16, 2005 correspondence I stated:

> "Should you need to review the investigative file in order to decide what course of action to take, you have the right to do so in the Equal Employment Opportunity Complaints Office, but not to copy documents within the file."

Had you availed yourself of this opportunity, a review of the Report of Investigation (ROI) containing the selectees responses to the KSA's would have determined that the selectee submitted considerably different responses to the KSA's as compared to Ms. Von Muhlenbrock who summarily checked-off what she thought was the highest-ranking criterion.

In sum, you have presented no new information that supports a finding that your client was discriminated against in reprisal for having engaged in prior protected activity when she did not advanced to the interview stage and was subsequently not selected for the position of Foreign Law Specialist, GS-0095-11, under Vacancy Announcement

4

#020307. The current case law reflects that Von Muhlenbrock cannot demonstrate a causal connection to her prior EEO activity which occurred seventeen years ago.

In conclusion and for the reasons herein stated, I do not find your request for reconsideration warranted. Accordingly your request for reconsideration is herewith denied.

## APPEAL RIGHTS

This is a Final Agency Decision. Should you be dissatisfied with the findings of this decision in EEO complaint in Case No. 03-38, you have the right to file a civil action in the appropriate U.S. District Court within ninety (90) days of receipt of this letter. If you decide to file a civil action, and do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. The Court may appoint an attorney in such circumstances as the Court deems just pursuant to federal statute (42 U.S.C. S2000e-5 (f) (1). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits.

Sincerely,

Dr. Ricardo H. Grijalva
Chief, EEO Complaints Office
Office of Workforce Diversity
Library of Congress

Forwarded via Regular and Registered Mail on May 26, 2005; Return Receipt Requested