# AFFIDAVIT OF GISELA VON MUHLENBROCK

I, Gisela von Muhlenbrock (prior EEO activity), make the following statement freely and voluntarily to Paul Greenberg, who has identified himself to me as an EEO Contract Investigator for the Library of Congress investigating a complaint of discrimination filed by me. Knowing that this statement is not confidential and may be shown to any interested party, I hereby solemnly affirm:

> I am making this affidavit in connection with a charge of reprisal discrimination that I filed against the Library of Congress. The issue that the Library has accepted for investigation is:

Whether I was the subject of reprisal when on or about July 9, 2003 I was not selected for the position of Foreign Law Specialist, GS-0095-11, advertised under Vacancy Announcement 020307.

1. **What was your former position with the Library? How long were you in this position?**
   I was hired to work as a Foreign Law Specialist in the Hispanic Law Division around February 1981, and held this position until around November 1989. This is substantially the same position that was advertised in Vacancy Announcement 020307.

   When I was hired into the Foreign Law Specialist position in 1981, I was paid at the entry-level GS-11 pay rate. I resigned my position with the Library in 1989 after a non-job-related injury. At the time I left, I was performing the Foreign Law Specialist position at a GS-14 Step 5 level.

2. **Your EEO charge alleges reprisal for earlier EEO activities. Please describe your prior EEO activity at the Library.**
   I engaged in protected activity in 1985, when I joined two female co-workers in filing a lawsuit against the Library, *Nguyen et al v. Boorstin*, Civil Action No. 85-1786 (D. D.C.). Our claims alleged violations of the Equal Pay Act and Title VII by the Library and various individual employees. Among the persons named as engaging in discriminatory conduct were Dr. Rubens Medina and Dr. Tao-Tai Hsia. A copy of our 1985 complaint has been submitted to the Investigator, to be included in the Report of Investigation (ROI).

   The lawsuit ultimately was settled, and the parties entered into a Consent Decree. (A copy of the Consent Decree has been submitted to the Investigator for the ROI). As part of the settlement, ¶9, the Library agreed that it would not "take any action of retaliation or reprisal against any of the plaintiffs." In addition, the Consent Decree provided that "the General Counsel of the Library of Congress shall personally explain to each of the



Initials S.P.B.A.

plaintiffs' division chiefs and to the Law Librarian of Congress the anti-retaliation requirements of the . . . federal statutes."

Notwithstanding the requirements of the Consent Decree, I subsequently experienced retaliation by my former supervisor, Dr. Medina. As I mentioned above, I left the Library after an injury in 1989. In 1991, I heard from a friend that there was a position open at the Library. I called Dr. Medina, and asked him to fax me a copy of the application. He refused to provide me with a copy of the application, but promised that I would be considered for future openings, including an assistant chief position. Dr. Medina knew that I was living in Chile. Notwithstanding his promises to me, I never received any communication from Dr. Medina letting me know when other positions opened. I sent a letter in May 1992 to the Librarian, James Billington, complaining about this retaliatory behavior by Dr. Medina. However, I could not file an EEO complaint from Chile at that time.

3.  **Please describe the circumstances surrounding your application for the Foreign Law Specialist position, and why you believe you were subjected to reprisal discrimination. What happened?**

    Late in 2002, I learned that a Foreign Law Specialist position was open, Vacancy Announcement 02046 (closing date 11/12/2002). I have provided a copy of the Vacancy Announcement to the Investigator, to be included in the ROI. Although this Vacancy Announcement was published, it was withdrawn before the closing date. I sent an email to the Library's personnel office asking why the announcement was withdrawn, but never received a response.

    

    The position was posted again in January 2003, Vacancy Announcement 020307. I applied for the job in January 2003 via the Internet. I printed a copy of my on-line job application for my records. I have provided a copy of this application to the Investigator for the ROI.

    Several aspects of my on-line application should be noted. First, under all the KSAs/Competencies, I checked-off the highest-ranking criterion as they were listed on the application. Second, the "Work History" section of the application shows that I occupied this exact position for nearly nine (9) years. Third, the "Work History" section plainly identifies Dr. Medina as my supervisor for the years when I previously worked at the Library, and expressly states that I did not authorize the Library's personnel office to contact him in connection with my application. I specifically did not want the personnel office to contact Dr. Medina because I was concerned that he would retaliate against me because of my prior EEO activity. Fourth, my resume attached to the application showed that I had additional work-related experience since leaving the Library.

    I received an email from the Library soon after submitting the application, acknowledging that they had received the application. On or about May 5, 2003, I

received an email advising me that I had not been selected for the position.

On May 15, 2003, I sent an email to Billie Nichols in the personnel office, asking for my score. I heard back from Ms. Nichols on July 9, 2003, advising me that my application had scored 96, but that the cut-off score for the group of applicants forwarded for interviews was 97. It is my understanding that 10 names were forwarded to the reviewing panel. I filed the EEO charge of retaliation on July17, 2003.

4.  **Of the people involved in the process of reviewing the applications and selecting candidates for the Foreign Law Specialist position, who had knowledge of your prior EEO activity?**
    It is my understanding that the interviewing panel for the Foreign Law Specialist position was comprised of Kersi Shroff (chair), Ruth Levush, and Dr. Tao-Tai Hsia. Of these three, I know that two had direct knowledge of my earlier protected activity. As noted above, Dr. Hsia was one of the Library managers expressly named in my 1985 EEO lawsuit. In addition, Kersi Shroff was a co-worker of mine during my tenure at the Library. Mr. Shroff and I enjoyed a good relationship, and we had multiple conversations about the lawsuit while it was proceeding. I personally do not recall knowing Ruth Levush and therefore am not aware of whether she knew of my prior protected activity.

    I personally do not know whether Billie Nichols was aware of my prior protected activity.

    In addition, Dr. Medina was named in the lawsuit, and therefore knew of my EEO activity.

5.  **Is there anything else about the selection process that you believe was improper, and supports your claim of reprisal discrimination?**
    It is clear to me that the selection process was improper. I note first that the duties of the Foreign Law Specialist position involves an unusual set of skills. I had successfully performed the job for nearly 9 years; it is extremely odd that 10 people would be judged as having better skills for the position than me. Second, comparing the on-line version of the job application that I completed with the version of the application printed by the personnel office (and found in the EEO Counselor's report in this Complaint), it is noticeable that the KSAs have been re-ordered. The on-line version of the application that I completed expressly suggested that the KSA responses were ranked from highest to lowest score, and I checked the highest box in response to each question. However, the version of the application that was used by the personnel office to rate the applications reordered the ranking of some of the responses such that my claim to the highest level of skill for each KSA was given a lower score. Further, I have reviewed the selectee's application. I believe that he should have scored lower than I because the foreign law specialist positions require comparative public policy analysis and/or interpretation of



Initials  S.7.B.A.

civil law in terms of its difference with the common law system and he lacked this experience. Moreover, there is no evidence of his bar admission as required by the vacancy announcement. Further, his work experience does not relate to public policy nor legislative analysis. He also did not work in a law library, nor has he been a law professor like myself. The Personnelist and Subject Matter Expert Panel are, at a minimum, chargeable with knowledge of such deficiencies. Noteworthy is that the selectee did not receive high interview scores as indicated on the Interview Rating Summary document.

Based on my years of experience at the Library, including service as a union shop steward, I believe it is almost certain that Dr. Medina was consulted about my application and played a role in ensuring that my application was ranked below the cut-off point for being interviewed. I base this on several factors. First, I know from personal experience that the Department heads at the Library maintain a very strong interest in their staff, and play an active role in making sure that they have the right people working for them. Second, one of the major job duties of the Foreign Law Specialist is to work with developing the Global Legal Information Network ("GLIN"). The work with the GLIN is featured prominently in the Vacancy Announcement, with a full paragraph. Over the years, Dr. Medina has been a central figure in developing the GLIN, and continues to exert a strong role in the program. I believe the heavy emphasis in the job announcement on the GLIN work is another manifestation of Dr. Medina's personal involvement with this job posting, and strongly suggests that he played a role in the application process that was adverse to me. The Ranking person and the Subject Matter Expert Panel would likely have had to discuss what the Western Law Division needed with Dr. Medina, particularly since there is no evidence that anyone involved in the selection process had civil law experience. Further, I believe that Dr. Medina may have known my interest in this position because of my questioning why the previous vacancy announcement was withdrawn.

Finally, I want to note that I have reviewed the EEO Counselor's Report, and I feel that it misses the focus of my complaint. I believe it is likely that the unlawful retaliation against me in reprisal for my earlier EEO activity took place during the initial evaluation of my application and the decision not to refer my name to the interviewing panel. However, the retaliation may have extended to the Subject Matter Expert Panel, also.

6.  **What remedy are you seeking?**
    As a remedy, I am seeking reinstatement into the Foreign Law Specialist position, back pay, attorney fees, and compensatory damages.

7.  **What other witnesses do you believe should be interviewed in connection with your complaint?**
    With regard to witnesses, I believe it is important to interview Billie Nichols and any other personnelists who were involved in evaluating the applications and ranking the

applicants for interview, as well as Dr. Medina, Dr. Tao-Tai Hsia, Ruth Levush, and Kersi Shroff.

I also believe it is important for the members of the Subject Matter Expert Panel to write their notes so they can be understood – their handwriting is to a great extent illegible despite the instructions that the notes "be legible." Moreover, the applications of the other persons applying for the position and the interview notes and ratings for those interviewed should be included in the ROI so that I can prove that I would have been selected over the other applicants absent retaliation. I also request the documents set forth in ROI Attachment #19.

I have read the above statement consisting of 5 pages, and it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

12/13/04
Date

Gisela von Muhlenbrock

Subscribed and sworn to before
me at Santiago, Chile. on the
13 day of december, 2004.
mgb.-

_____
Notary Public

SUSANA BELMONTE AGUIRRE
NOTARIO INTERINO
SEGUNDA NOTARIA DE PROVIDENCIA

Initials S.P.B.A.

# PRIVACY ACT NOTICE TO COMPLAINANT
## FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data you supplied previously and information developed by investigation to resolve your equal employment opportunity discrimination complaint. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve your equal employment opportunity discrimination complaint. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to Equal Employment Opportunity Commission activities, or to others for uses as published in the Federal Register.

### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary. However, failure to furnish the information will result in your complaint being returned without action and being recommended for cancellation for failure to prosecute.

_____  _____
Signature of Interviewer          Signature of Complainant

11/8/04                           Washington, DC
_____  _____
Date                              Place