# EXHIBIT 11 - Plaintiff's Interrogatory Responses

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GISELA VON MUHLENBROCK, )<br><br>Plaintiff, )<br><br>v. )<br><br>JAMES H. BILLINGTON, )<br>Librarian of Congress, )<br><br>Defendant. )<br>_____) | Civil Action No. 05-1921 (HHK) |

## PLAINTIFF GISELA VON MUHLENBROCK'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff, Gisela von Muhlenbrock, by and through undersigned counsel, hereby sets forth her Responses to Defendant's First Set of Interrogatories.

## GENERAL OBJECTIONS

a.  The information contained in these responses is being provided in accordance with the provisions and intent of the applicable rules of procedure, which require the disclosure of all facts, which may be relevant or may lead to discovery of relevant information. Accordingly, the parties answering these Interrogatories, by providing the information requested, do not waive objections to their admission in evidence on grounds of materiality or relevance or any other proper grounds for objection.

b.  The information supplied in these responses is not based solely on the knowledge of the executing parties but includes knowledge of the parties, their agents, representatives and attorneys, unless privileged.

c.  The word usage and sentence structure may be that of the attorney assisting in the preparation of these answers, and thus does not necessarily purport to be the precise language of the executing parties.

d. These answers furnish knowledge, facts and information presently available. As requested, if subsequent or different information is obtained before trial, these discovery requests will be appropriately supplemented, either formally or informally, by communicating the information to all parties.

e. Plaintiff objects to the discovery requests to the extent they call for information or documents that are protected by attorney-client privilege or attorney's work product privilege, in that as such it exceeds the scope of permissible discovery, and the information sought will not be provided.

f. Plaintiff objects to the discovery requests to the extent they would require it to produce documents that are no longer in its possession, custody, or control, and that are no longer in the possession of any expert witness whom Plaintiff expects to call at trial.

g. Statements that responsive documents will be produced in response to a discovery request shall not be read as an acknowledgment that such documents exist. Plaintiff objects to the extent that any request would require Plaintiff or any of their expert witnesses to create documents that would not have existed independent of the requests.

h. Documents requested and which are indicated herein will be produced by Plaintiff's counsel and will be made available for inspection at Plaintiff's counsel's office at a mutually convenient date and time.

i. Plaintiff reserves the right to produce documents that substantively respond to Defendant's interrogatories rather than providing a written answer herein.

j. These general objections are incorporated by reference into each specific objection.

## RESPONSES TO INTERROGATORIES

1.    Please identify each and every individual who can support, or has personal knowledge
concerning or relevant to, your contention that the Library of Congress ("LOC")'s actions
violated Title VII of the Civil Rights Act of 1964, as amended, and/or your claim that you
were the victim of discrimination and/or retaliation in this matter. For each individual that
you identify, include in your response: the substance of that individual's knowledge, when
that individual gained the substance of his or her knowledge, and how he or she obtained that
knowledge.

**Answer:** Plaintiff identifies the following such individuals:

(1) Plaintiff, Ms. Gisela von Muhlenbrock (15301 Pine Orchard Drive, #1J, Silver Spring, Maryland

20906, (301) 598-4701) (1980-2004) – Plaintiff has knowledge regarding her employment as a

Foreign Law Specialist with the LOC in the 1980's; gender discrimination against Plaintiff in the

1980's by then supervisor, Dr. Rubens Medina; Plaintiff's sexual harassment complaint against Dr.

Medina in 1982; Plaintiff's complaint of discrimination on the basis of gender discrimination at the

Equal Employment Opportunity Office, LOC, EEO Case No. 84-67 in 1984; Plaintiff's gender

discrimination action against the LOC, entitled *Nguyen et al. v. Boorstin*, Civil Action No. 85-1786,

which was filed in the United States District Court for the District of Columbia in 1985; the

settlement of this 1985 action pursuant to the Consent Decree, Settlement Agreement and Stipulation

of Dismissal entered into on January 10, 1986; Plaintiff's resignation in 1989; Plaintiff's attempts to

regain employment with the LOC during the 1990's and the LOC's actions preventing same;

Plaintiff's seeking reemployment with the LOC in 2003; the LOC's non-selection of Plaintiff on the

basis of discrimination and retaliation against her in violation of Title VII of the Civil Rights Act of

1964, as amended; and Plaintiff's resulting EEO complaints against the LOC in 2003 for non-

selection.

(2) Ms. Francine Weiss (1901 L Street, N.W., Suite 610, Washington, D.C. 29936, (202) 331-9260)

(2003) – Ms. Weiss is an attorney Plaintiff contacted from Santiago, Chile, to represent her when she

filed an informal EEO complaint for non-selection against the LOC on July 17, 2003, EEO Case #

03-38.

(3) Ms. Danee Gaines (9305 Palmer Place, Laurel, MD, 20708, (301) 776-6640 or (301) 996-7687)

(2003) – Ms. Gaines is the EEOC Counselor, LOC who was assigned Plaintiff's EEO complaint.

(4) Mr. Paul Greenberg (439 M Street, S.W. Box 701, Washington, D.C. 20024, (202) 484-1156)

(2003) – Mr. Greenberg is the arbitrator and mediator that was retained to investigate Plaintiff's

EEO complaint.

(5) Dr. Rubens Medina (Library of Congress, 101 Independence Avenue, NW, Washington, DC,

20540) (1980-2003) – Dr. Medina, Law Librarian, has knowledge regarding Plaintiff's

employment as a Foreign Law Specialist with the LOC in the 1980's; Plaintiff's sexual harassment

complaint against him in 1982; Plaintiff's complaint of discrimination on the basis of gender

discrimination at the Equal Employment Opportunity Office, LOC, EEO Case No. 84-67 in 1984;

Plaintiff's gender discrimination action against the LOC, entitled *Nguyen et al. v. Boorstin,*

Civil Action No. 85-1786, which was filed in the United States District Court for the District of

Columbia in 1985; the settlement of this 1985 action pursuant to the Consent Decree, Settlement

Agreement and Stipulation of Dismissal entered into on January 10, 1986; Plaintiff's resignation in

1989; the details of Plaintiff's phone conversations with Dr. Medina on January 14 and 15, 1991

regarding reemployment with the LOC; Plaintiff's February 22, 1991 letter to him stating her interest

in a position with the Law Library, and asking for information regarding vacant positions; Plaintiff's

call to him on February 27, 1991, to verify that he had received Plaintiff's letter and asking whether

recruiting problems had been solved; and information regarding the position advertised at Vacancy

Announcement No. 020307 and/or the hiring and selection process for such position, as Dr. Medina

was Law Librarian in 2003.

(6) Mr. James Billington (Library of Congress, 101 Independence Avenue, NW, Washington, DC

20540) (1991/1992) – Mr. Billington, Librarian of Congress, has knowledge about Plaintiff's

letter to him in 1991 regarding her attempts to apply for a position with the LOC in 1991; Mr.

4

Billington's March 20, 1992 letter in response, declining to proceed with Plaintiff's complaints and stating that an available position had been posted from "January 15, 1991 until February 14, 1991"; and Mr. Ben Benitez's, then Director of Human Resources, letter to Plaintiff on June 2, 1992 regarding a "limited hiring freeze" at the LOC.

(7) Ms. Linda Cartwright (address unknown) (1991) – Ms. Cartwright, a member of Congressman Bill Green's staff, has information regarding Plaintiff's letter to her in 1991 regarding Mr. Billington's failure to timely respond to Plaintiff's letter to him about her attempts to apply for a position with the LOC in 1991; and Ms. Cartwright's letter to Plaintiff on January 28, 1992 stating that Congressman Bill Green's administrative assistant spoke to the LOC regarding Plaintiff's complaints.

(8) Mr. Kersi Schroff (Library of Congress, 101 Independence Avenue, NW, Washington, DC 20540) (1985-2004) – As Selecting Official for Vacancy Announcement No. 020307, Mr. Schroff has knowledge regarding the interview and selection process for the position; Ms. Nichols' January 30, 2003 e-mail to him attaching the names and scores of qualified applicants, including Plaintiff's, and requesting the number of applicants to be selected for interview; and the basis for the statement in his sworn affidavit dated December 14, 2004, provided to investigator Paul Greenberg, that "Ms. Nichols provided the Selecting Panel with the total number of applicants who met the minimal qualifications, and also the raw scores of each of the qualified applicants. This list, however, did not include the names of any of the applicants – just their scores."

(9) Ms. Katty Price (Library of Congress, 101 Independence Avenue, NW, Washington, DC 20540) (1991) - Plaintiff wrote Ms. Price, then Law Librarian of Congress, on February 22, 1991, stating her interest in a position with the Law Library, and asking for information regarding two vacant positions in the LLHisp.

(10) Ms. Billie Nichols (Library of Congress, 101 Independence Avenue, NW, Washington, DC

20540, (202) 707-0028) (2003-2004) – Ms. Nichols, Staffing Specialist, Human Resources, has

information regarding the policies and procedures followed in filling Vacancy Announcement No.

020307, as well the Library of Congress Merit Selection and Promotion Plan of June 19, 2001; her

January 30, 2003 e-mail to Mr. Schroff attaching the names and scores of qualified applicants,

including Plaintiff's, and requesting the number of applicants to be selected for interview; and the

accuracy of Mr. Schroff's statement in his sworn affidavit dated December 14, 2004, provided to

investigator Paul Greenberg, that "Ms. Nichols provided the Selecting Panel with the total number of

applicants who met the minimal qualifications, and also the raw scores of each of the qualified

applicants. This list, however, did not include the names of any of the applicants – just their scores."

(11) Congressman Bill Green's administrative assistant in 1991/1992 (address unknown)

(1991/1992) – According to a January 28, 1992 letter from Ms. Cartwright, Congressman Bill

Green's administrative assistant talked to the LOC regarding the complaints Plaintiff made in her

1991 letter to Mr. Billington. The LOC informed the administrative assistant that Plaintiff's case

was "going through the channels and being taken seriously and that a congressional inquiry would

not speed things along."

(12) Mr. Ben Benitez (address unknown) (1991/1992) - On June 2, 1992, then Director of Human

Resources, Mr. Benitez wrote a letter to Plaintiff, at Mr. Billington's request, stating that the LOC

had imposed a "limited hiring freeze" due to budgetary uncertainties, and that few positions were

being filled. Once the freeze was lifted, available positions would be filled under the LOC's Merit

Selection and Employment Plan. Mr. Benitez also stated that potential applicants for positions with

the LOC assume responsibility for applying to vacancies during the period they are open.

(13) Mr. Gustavo Guerra (Foreign Law Specialist, Library of Congress, 101 Independence Avenue,

NW, Washington, DC 20540) (2003) – Mr. Guerra is the applicant selected to fill the position

advertised at Vacancy Announcement No. 020307. Plaintiff believes he has information regarding

6

his qualifications for the position, the contents of his application, any document requested or supplied to the LOC to support same, and the interview process for this position.

(14) Ms. Ruth Levush (Library of Congress, 101 Independence Avenue, NW, Washington, DC 20540, (202) 707-9847) (2003) – Ms. Levush has knowledge regarding the interview and selection process for Vacancy Announcement No. 020307.

(15) Ms. Phuong Khan Thi Nguyen (address unknown) (1985-1996) – Ms. Nguyen is a co-plaintiff in Plaintiff's gender discrimination action against the LOC in 1985. She has information regarding gender discrimination by her supervisor at the time, Dr. Hsai. She also has information regarding her transfer, in 1996, from the Far Eastern Law Division of the LOC to the Research and Reference Division, because she had been working in a hostile environment.

(16) Dr. Tao-Tai Hsai (address unknown) (1985-2003) – Dr. Hsai was Ms. Nguyen's supervisor in the Far Eastern Law Divison of the LOC who was alleged to have discriminated against her in Plaintiff's gender discrimination action against the LOC in 1985. He has knowledge regarding Ms. Nguyen's transfer, in 1996, from the Far Eastern Law Division of the LOC to the Research and Reference Division, because she had been working in a hostile environment. Dr. Hsai also has knowledge regarding the interview and selection process for Vacancy Announcement No. 020307.

There may be additional persons with knowledge of facts that will support Plaintiff's allegations that are currently unknown to Plaintiff because discovery has not been completed. Plaintiff will supplement this interrogatory if additional information becomes available during discovery.

2.      Please identify each and every document (including diaries and notes) referring to, relating to, or supporting the allegations set forth in your Complaint, including in your response the name and address of the present custodian of each such document, and if any such document has been destroyed or otherwise disposed of, the date and circumstance of such disposition.

**Answer:** All such documents will be produced by the Plaintiff or are in the possession of the LOC

with the exception of the following two documents, which have been misplaced: (1) Plaintiff's

original online application for Vacancy Announcement No. 020307, which was provided to

investigator Paul Greenberg in 2004 by Plaintiff's attorney, Ms. Weiss, during the investigation into

Plaintiff's informal EEO complaint against the LOC; and (2) Plaintiff's letter to Ms. Cartwright, a

member of Congressman Bill Green's staff, in 1991, regarding Mr. Billington's, Librarian of

Congress, failure to timely respond to her complaints about her attempt to apply for a position with

the LOC in 1991.

3.      With reference to each witness you intend to call at trial (including expert witnesses), please
        state the name, address, contact information, and occupation or specialty of each witness; the
        subject matter on which the expert is expected to testify; the substance of each opinion each
        experts is expected to offer; and the factual basis upon which each such opinion is based.

**Answer:**  Plaintiff objects to this interrogatory as premature as Plaintiff has not yet identified the

persons she expects to call at trial or the subject matter or facts about which they will testify.

Notwithstanding and without waiving such objection, Plaintiff incorporates herein her response to

Interrogatory No. 1.

4.      Please identify each and every fact, state the basis for, and list all evidence you have in your
        possession that supports your contention that the LOC violated Title VII of the Civil Rights
        Act of 1964, as amended and/or your contention that the LOC violated a "CONSENT
        DECREE, SETTLEMENT AGREEMENT AND STIPULATION OF DISMISSAL entered
        into January 10, 1986 concerning a complaint filed in [t]he United States District Court for
        the District of Columbia, *Nyugen et al. v. Boorstin*, Civil Action No. 85-1786," as set forth
        in Paragraphs 1 and 2 of your Complaint. For each fact that you identify, please explain what
        basis you have for believing or knowing the fact to be true.

**Answer:**  On April 21, 1980, Plaintiff applied for a Foreign Law Specialist position advertised in

The Washington Post.  The position was located in the Law Library, LOC, Hispanic Law Division,

which was headed by Dr. Rubens Medina.  Plaintiff was hired for this position on February 2, 1981.

In 1982, Plaintiff lodged a sexual harassment complaint against Dr. Medina with Ms. Doris E. Pierce

of the LOC Staff Relations Office.  In 1984, Plaintiff filed a Complaint of Discrimination on the

basis of gender discrimination at the Equal Employment Opportunity Office, LOC, EEO Case

8

No. 84-67. The EEO case was not resolved and evolved into *Nguyen et al. v. Boorstin*, Civil Action No. 85-1786, which was filed in the United States District Court for the District of Columbia in 1985. This case was settled pursuant to the Consent Decree, Settlement Agreement and Stipulation of Dismissal entered into on January 10, 1986, which contained an anti-retaliation clause. In 1989, Plaintiff resigned from the LOC.

On January 14 and 15, 1991, Plaintiff called Dr. Medina, then Division Chief of the Hispanic Law Division ("LLHisp") to obtain an application form for two vacant positions with the LOC (Assistant Chief and Legal Specialist), and ask for information regarding the LLHisp's future employment needs with respect to Specialists. Dr. Medina told Plaintiff that the posting had expired and position temporarily filled, and refused to send Plaintiff an application form. He talked about uncertainty regarding future openings for Specialist and Assistant Chief positions because of budgetary restrictions. Dr. Medina also stated that he was concerned about being able to respond to the volume of requests forwarded to LLHisp.

Plaintiff also wrote to Dr. Medina and Ms. Katty Price, Law Librarian, on February 22, 1991, stating her interest in a position with the Law Library, and asking for information regarding the two vacant positions in the LLHisp. On February 27, 1991, Plaintiff called Dr. Medina to verify that he had received Plaintiff's letter. Plaintiff also asked whether the recruiting problem had been solved because he was the only Specialist in a Division that receives numerous requests. During this conversation, he stated that the budget problem continued.

Plaintiff wrote to Mr. Billington in 1991 to complain that Dr. Medina had refused to fax her applications for available positions in the LLHisp, and that Dr. Medina had misled her about the availability of such positions. Plaintiff asked Mr. Billington to investigate Dr. Medina's actions. Plaintiff also attached phone records to this letter indicating the phone calls she made to Dr. Medina. Mr. Billington did not respond to Plaintiff's 1991 letter until March 20, 1992.

9

In the interim, Plaintiff wrote to Ms. Cartwright in 1991 to complain when she did not receive a timely response from Mr. Billington to her 1991 letter, and seeking Ms. Cartwright's assistance with the matter. Ms. Cartwright responded via letter on January 28, 1992. Ms. Cartwright said in this letter that Congressman Bill Green's administrative assistant talked to the LOC regarding the complaints Plaintiff made in her 1991 letter to Mr. Billington. The LOC informed the administrative assistant that Plaintiff's case was "going through the channels and being taken seriously and that a congressional inquiry would not speed things along."

Mr. Billington's March 20, 1992 letter in response stated, in part, that the posting period for the Specialist Positions extended from "January 15, 1991 until February 14, 1991". Plaintiff had spoken to Dr. Medina on January 14 and 15, 1991, at which time she was told the posting had already expired and the position temporarily filled. Mr. Billington's letter reveals that in fact the position had not expired or been filled as it was posted the day after, and the day of, Plaintiff's conversations with Dr. Medina. Mr. Billington also informed Plaintiff that the LOC would not proceed with her complaint because Plaintiff did not contact the LOC's EEO office within 20 days of the alleged discriminatory action. Furthermore, he incorrectly stated that Plaintiff had not contacted Dr. Medina until February 27, 1991, after the vacancy announcement had closed. If there was any investigation into Plaintiff's complaints as stated in her 1991 letter, Mr. Billington and the LOC never contacted Plaintiff to verify her statements.

On January 19, 2003, Plaintiff applied online for a Foreign Law Specialist position with the LOC, which was announced at Vacancy Announcement No. 020307. On May 5, 2003, Plaintiff received an e-mail from the LOC stating that she had not been selected. On May 13, 2003 she requested via e-mail that Staffing Specialist Billie Nichols of Human Resources provide her with her score and that of the person selected. Ms. Nichols responded in an e-mail dated July 9, 2003, stating that Plaintiff's score was a 96, while 97 was the cutoff score for interview referral.

On January 30, 2003, Ms. Nichols sent Selecting Official, Mr. Kersi Schroff, an e-mail attaching the names and scores of thirty-four candidates for the position, including Plaintiff's. Ms. Nichols stated that "[t]he numbers have changed somewhat", and requested that Mr. Schroff inform her of how many candidates he wished to interview for the position. Mr. Schroff was therefore aware that Ms. von Muhlenbrock applied for the position when he set the cutoff score for interview just one point higher than Plaintiff's score.

Mr. Schroff's sworn affidavit dated December 14, 2004, provided to investigator Paul Greenberg, states that "Ms. Nichols provided the Selecting Panel with the total number of applicants who met the minimal qualifications, and also the raw scores of each of the qualified applicants. This list, however, *did not include the names of any of the applicants – just their scores*." (emphasis added). This statement is untrue as per the January 30, 2003 e-mail from Ms. Nichols to Mr. Schroff attaching the names of the qualified applicants, including Plaintiff's, were listed.

The rules and procedures of the Library of Congress Merit Selection and Promotion Plan of June 19, 2001 were not followed in the selection process for this position. The LCMSPP states that the automated system should generate a list of the top seven applicants plus tied scores for interview referral purposes. However, the Selecting Official may request a larger pool *prior to* receiving the referral list. All referrals should be based on the automated system results.

Here, the Selecting Official determined the number of applicants he wanted to interview only *after* reviewing a list of all thirty-four minimally qualified candidates, including their names and scores. Furthermore, Vacancy Announcement No. 020307 established that, at the interview, applicants should present their certification to practice law, bar membership and college transcripts. However, there is no indication in the Structured Interview Guide for the selected applicant that such information was presented or requested. Also, from a review of the selected applicant's Structured Interview Guide and application, it appears that the selected applicant overstated his credentials,

11

particularly with respect to his Judicial Specialization Degree obtained from the Federal Judicial

Institute since the Institute offers only training courses (as opposed to academic degrees). There is

no indication in the applicant's application or interview documents that such information was ever

verified by the LOC.

The facts and the reasonable inferences to be drawn from the facts set forth above support the

allegation that the LOC violated Title VII of the Civil Rights Act of 1964, as amended and the

"CONSENT DECREE, SETTLEMENT AGREEMENT AND STIPULATION OF DISMISSAL."

5.     Please identify each and every individual to whom you complained about the LOC's alleged
       violation(s) of Title VII of the Civil Rights Act of 1964, as amended. For each individual
       that you identify, include in your response the date(s) you complained to that individual, the
       substance of the conversation, and what, if any, remedy you requested.

**Answer**: Plaintiff objects to this interrogatory to the extent that the information requested is

protected by the attorney-client privilege. Notwithstanding and without waiving such objection,

Plaintiff identifies the following individuals: (1) Mr. Billington, Librarian of Congress, in a 1991

letter in which Plaintiff stated that Dr. Medina had refused to fax her applications for available

positions in the LLHisp. She also stated in the letter that Dr. Medina had misled her about the

availability of the positions. During phone conversations with Dr. Medina in January and February

1991, Dr. Medina refused to fax Plaintiff application forms for available positions and told Plaintiff

that a Foreign Specialist vacancy had expired and been temporarily filled. Plaintiff asked Mr.

Billington to investigate Dr. Medina's actions; (2) Ms. Cartwright, to whom Plaintiff wrote in 1991

to complain when she did not receive a timely response from Mr. Billington to her 1991 letter, and

seeking Ms. Cartwright's assistance with the matter; (3) Ms. Weiss, who Plaintiff asked to represent

her when she filed an informal EEO complaint for non-selection against the LOC on July 17, 2003;

(4) Ms. Gaines, an EEOC Counselor, LOC who was assigned Plaintiff's EEO complaint; and (5) Mr.

Greenberg, an arbitrator and mediator who was retained to investigate Plaintiff's EEO complaint.

6.     Describe and identify the communication you claim that you had with Dr. Rubens Medina on

January 14, 1991. Include in your response any details that relate to, describe, or explain your belief that the "tone and answers" of the conversation were "contradictory and not trustworthy" as alleged in Paragraph 12 of your complaint.

**Answer:** On January 14 and 15, 1991, Plaintiff called Dr. Medina to obtain an application form for

two vacant positions with the LOC (Assistant Chief and Legal Specialist), and ask for information

regarding the LLHisp's future employment needs with respect to Specialists. Dr. Medina told

Plaintiff that the posting had expired and position temporarily filled, and refused to send Plaintiff an

application form. He talked about uncertainty regarding future openings for Specialist and Assistant

Chief positions because of budgetary restrictions. Dr. Medina also stated that he was concerned

about being able to respond to the volume of requests forwarded to LLHisp. The tone of this

conversation, and his contradictory assertions indicated to Plaintiff that Dr. Medina was not

telling the truth.

7.    Describe and identify each and every communication you had with Dr. James Billington, the Librarian of Congress, and Ms. Linda Cartwright (or Ms. Linda Cartrigth, as the case may be) in the office of Congressman Bill Green as alleged in Paragraph 12 of your complaint.

**Answer:**  Plaintiff wrote Mr. Billington and Ms. Cartwright one letter each in 1991. Plaintiff has

since misplaced both letters, but believes the letter to Mr. Billington should be in the LOC's files.

Plaintiff's 1991 letter to Mr. Billington stated that Dr. Medina had refused to fax her applications for

available positions in the LLHisp. She also stated in the letter that Dr. Medina had misled her about

the availability of the positions. During phone conversations with Dr. Medina in January and

February 1991, Dr. Medina refused to fax Plaintiff application forms for available positions and told

Plaintiff that a Foreign Specialist vacancy had expired and been temporarily filled. Plaintiff asked

Mr. Billington to investigate Dr. Medina's actions.

Mr. Billington did not respond to Plaintiff's 1991 letter until March 20, 1992. Mr. Billington stated,

in part, that the posting period for the Specialist Positions extended from "January 15, 1991

until February 14, 1991". Mr. Billington also informed Plaintiff that the LOC would not proceed

13

with her complaint because Plaintiff did not contact the LOC's EEO office within 20 days of the

alleged discriminatory action.  Furthermore, he incorrectly stated that Plaintiff had not contacted Dr.

Medina until February 27, 1991, after the vacancy announcement had closed.

Plaintiff wrote to Ms. Cartwright in 1991 to complain when she did not receive a timely response

from Mr. Billington to her 1991 letter, and seeking Ms. Cartwright's assistance with the matter.  Ms.

Cartwright responded via letter on January 28, 1992.  Ms. Cartwright said in this letter that

Congressman Bill Green's administrative assistant talked to the LOC regarding the complaints

Plaintiff made in her 1991 letter to Mr. Billington.  The LOC informed the administrative assistant

that Plaintiff's case was "going through the channels and being taken seriously and that a

congressional inquiry would not speed things along."

8.     Describe and identify each and every communication you had with Dr. Rubens Medina and
       Ms. Katty Price between January 1, 1991 and the present.  Include in your response any
       details that relate to or explain your contention that you "called Dr. Medina on February 27,
       1991 to ask for the other postings he had communicated and obtained a negative response" as
       alleged in Paragraph 13 of your complaint.

**Answer:** On January 14 and 15, 1991, Plaintiff called Dr. Medina to obtain an application form for

two vacant positions with the LOC (Assistant Chief and Legal Specialist), and ask for information

regarding the LLHisp's future employment needs with respect to Specialists.  Dr. Medina told

Plaintiff that the posting had expired and position temporarily filled, and refused to send Plaintiff an

application form.  He talked about uncertainty regarding future openings for Specialist and Assistant

Chief positions because of budgetary restrictions.  Dr. Medina also stated that he was concerned

about being able to respond to the volume of requests forwarded to LLHisp.  Plaintiff also wrote to

Dr. Medina and Ms. Katty Price, Law Librarian, on February 22, 1991, stating her interest in a

position with the Law Library, and asking for information regarding the two vacant positions in the

LLHisp.  On February 27, 1991, Plaintiff called Dr. Medina to verify that he had received Plaintiff's

letter.  Plaintiff also asked whether the recruiting problem had been solved because he was the only

14

Specialist in a Division that receives numerous requests. During this conversation, he stated that the budget problem continued.

9.   Identify each and every fact, state the basis for, and list all evidence you have in your possession which supports your allegation that the answer provided by Mr. Billington, the Librarian of Congress, "indicated that Dr. Medina had not told the truth in refusing to fax the application in January because the posting extended from 'January 15, 1991 until February 14, 1991'" as alleged in Paragraph 14 of your complaint.

**Answer:** On January 14 and 15, 1991, Plaintiff called Dr. Medina to obtain an application form for two vacant positions with the LOC (Assistant Chief and Legal Specialist), and ask for information regarding the LLHisp's future employment needs with respect to Specialists. Dr. Medina told Plaintiff that the posting had expired and position temporarily filled, and refused to send Plaintiff an application form. He talked about uncertainty regarding future openings for Specialist and Assistant Chief positions because of budgetary restrictions. Mr. Billington wrote a letter to Plaintiff on March 20, 1992 letter, which stated in pertinent part, that the posting period for the Specialist Position extended from "January 15, 1991 until February 14, 1991". Therefore, the posting period for the Specialist position actually began on the day that Plaintiff spoke to Dr. Medina, rather than having expired and been temporarily filled as Dr. Medina told Plaintiff on January 14 and 15, 1991.

10.  Identify each and every fact, state the basis for, and list all evidence you have in your possession which supports your allegations that the Librarian of Congress and the then Director of Human Resources, Mr. Ben Benitez, "willfully ignored" that you were abroad and "depended completely on information from the retaliator himself" as alleged in Paragraph 15 of your complaint (which is misnumbered in the Complaint as paragraph number "14.").

**Answer:** On January 14 and 15, 1991, Plaintiff called Dr. Medina to obtain an application form for two vacant positions with the LOC (Assistant Chief and Legal Specialist), and ask for information regarding the LLHisp's future employment needs with respect to Specialists. Dr. Medina told Plaintiff that the posting had expired and position temporarily filled, and refused to send Plaintiff an application form. He talked about uncertainty regarding future openings for Specialist and Assistant

15

Chief positions because of budgetary restrictions. Dr. Medina also stated that he was concerned about being able to respond to the volume of requests forwarded to LLHisp. The tone of this conversation, and his contradictory assertions indicated to Plaintiff that Dr. Medina was not telling the truth.

Plaintiff also wrote to Dr. Medina and Ms. Katty Price, Law Librarian, on February 22, 1991, stating her interest in a position with the Law Library, and asking for information regarding the two vacant positions in the LLHisp. On February 27, 1991, Plaintiff called Dr. Medina to verify that he had received Plaintiff's letter. Plaintiff also asked whether the recruiting problem had been solved because he was the only Specialist in a Division that receives numerous requests. During this conversation, he stated that the budget problem continued.

Plaintiff wrote to Mr. Billington in 1991, in a letter postmarked in Chile, to complain that Dr. Medina had refused to fax her applications for available positions in the LLHisp, and that Dr. Medina had misled her about the availability of such positions. Plaintiff asked Mr. Billington to investigate Dr. Medina's actions. Plaintiff also attached phone records to this letter indicating the phone calls she made to Dr. Medina.

Mr. Billington did not respond to Plaintiff's 1991 letter until March 20, 1992. Mr. Billington stated, in part, that the posting period for the Specialist Positions extended from "January 15, 1991 until February 14, 1991". Plaintiff had spoken to Dr. Medina on January 14 and 15, 1991, at which time she was told the posting had already expired and the position temporarily filled. Mr. Billington's letter reveals that in fact the position had not expired or been filled as it was posted the day after, and the day of, Plaintiff's conversations with Dr. Medina.

Mr. Billington also informed Plaintiff that the LOC would not proceed with her complaint because Plaintiff did not contact the LOC's EEO office within 20 days of the alleged discriminatory action. Furthermore, he incorrectly stated that Plaintiff had not contacted Dr. Medina until February 27,

1991, after the vacancy announcement had closed. If there was any investigation into Plaintiff's complaints as stated in her 1991 letter, Mr. Billington and the LOC never contacted Plaintiff to verify her statements, relying solely upon the statements of Dr. Medina.

11.     Identify each and every fact, state the basis for, and list all evidence you have in your possession which supports your contention that the "current rules in force and procedures were not followed during the selection process by the selecting panel and the affidavits contain untruthful statements as also does the application of the candidate chosen," as alleged in Paragraph 20 of your complaint.

**Answer:** On January 19, 2003, Plaintiff applied online for a Foreign Law Specialist position with the LOC, which was announced at Vacancy Announcement No. 020307. On May 5, 2003, Plaintiff received an e-mail from the LOC stating that she had not been selected. On May 13, 2003 she requested via e-mail that Staffing Specialist Billie Nichols of Human Resources provide her with her score and that of the person selected. Ms. Nichols responded in an e-mail dated July 9, 2003, stating that Plaintiff's score was a 96, while 97 was the cutoff score for interview referral.

On January 30, 2003, Billie Nichols of Human Resources had sent Selecting Official Kersi Schroff an e-mail with the names and scores of thirty-four candidates for the position, including Plaintiff's. Ms. Nichols stated that "[t]he numbers have changed somewhat" and requested that Mr. Schroff inform her of how many candidates he wished to interview for the position. Mr. Schroff was therefore aware that Ms. von Muhlenbrock applied for the position when he set the cutoff score for interview just one point higher than Plaintiff's score.

Mr. Schroff's sworn affidavit dated December 14, 2004, provided to investigator Paul Greenberg, states that "Ms. Nichols provided the Selecting Panel with the total number of applicants who met the minimal qualifications, and also the raw scores of each of the qualified applicants. This list, however, *did not include the names of any of the applicants – just their scores*." (emphasis added). This statement is untrue as per the January 30, 2003 e-mail from Ms. Nichols to Mr. Schroff attaching the names of the qualified applicants, including Plaintiff's, were listed.

17

The rules and procedures of the Library of Congress Merit Selection and Promotion Plan of June 19, 2001 were not followed in the selection process for this position. The LCMSPP states that the automated system should generate a list of the top seven applicants plus tied scores for interview referral purposes. However, the Selecting Official may request a larger pool *prior* to receiving the referral list. All referrals should be based on the automated system results. Here, the Selecting Official determined the number of applicants he wanted to interview only *after* reviewing a list of all thirty-four minimally qualified candidates, including their names and scores.

Furthermore, Vacancy Announcement No.020307 established that, at the interview, applicants should present their certification to practice of law, bar membership and college transcripts. However, there is no indication in the Structured Interview Guide for the selected applicant that such information was presented or requested. Also, from a review of the selected applicant's Structured Interview Guide and application, it appears that the selected applicant overstated his credentials, particularly with respect to his Judicial Specialization Degree obtained from the Federal Judicial Institute since the Institute offers only training courses (as opposed to academic degrees). There is no indication in the applicant's application or interview documents that such information was ever verified by the LOC.

12.    Identify each and every fact, state the basis for, and list all evidence you have in your possession which supports your contention that "members of the selection panel had seen Gisela Von Muhlenbrock's name in the first list generated by the automated system" as alleged in Paragraph 20A of your complaint.

**Answer:**  On January 30, 2003, Billie Nichols of Human Resources sent Selecting Official Kersi Schroff an e-mail attaching the names and scores of thirty-four qualified candidates for the Foreign Law Specialist Position at Vacancy Announcement No. 020307, which Plaintiff applied for on January 19, 2003.  Plaintiff's name and score were included on the attached list.  Ms. Nichols requested that Mr. Schroff inform her of how many candidates he wished to interview for the

position.

13.    Identify each and every fact, state the basis for, and list all evidence you have in your possession that supports your allegation that "Kersi Schroff lied about it" as alleged in Paragraph 20A of your complaint.

**Answer**: Plaintiff objects on the ground that this interrogatory is vague and overly broad.

Notwithstanding and without waiving such objection, on January 30, 2003, Billie Nichols of Human

Resources sent Selecting Official Kersi Schroff an e-mail attaching the names and scores of thirty-

four qualified candidates for the Foreign Law Specialist Position at Vacancy Announcement No.

020307, which Plaintiff applied for on January 19, 2003. Plaintiff's name and score were included

on the attached list. Ms. Nichols requested that Mr. Schroff inform her of how many candidates he

wished to interview for the position. Mr. Schroff was therefore aware that Ms. von Muhlenbrock

applied for the position when he asked to interview only 10 candidates. Plaintiff was number 11.

Mr. Schroff's sworn affidavit dated December 14, 2004, provided to investigator Paul Greenberg,

states that "Ms. Nichols provided the Selecting Panel with the total number of applicants who met

the minimal qualifications, and also the raw scores of each of the qualified applicants. This

list, however, did *not include the names of any of the applicants – just their scores*." (emphasis

added). This statement is untrue as per the January 30, 2003 e-mail from Ms. Nichols to Mr. Schroff

attaching the names of the qualified applicants, including Plaintiff's, were listed.

14.    Identify each and every fact, state the basis for, and list all evidence you have in your possession which supports your contention that the Selection Panel used an "unlawful cutoff score and "excluded Gisela Von Muhlenbrock arbitrarily," as alleged in Paragraph 20A of your complaint.

**Answer**: On January 19, 2003, Plaintiff applied online for a Foreign Law Specialist position with

the LOC, which was announced at Vacancy Announcement No. 020307. On May 5, 2003, Plaintiff

received an e-mail from the LOC stating that she had not been selected. On May 13, 2003 she

requested via e-mail that Staffing Specialist Billie Nichols of Human Resources provide her with her

score and that of the person selected. Ms. Nichols responded in an e-mail dated July 9, 2003, stating

that Plaintiff's score was a 96, while 97 was the cutoff score for interview referral.

On January 30, 2003, Billie Nichols of Human Resources had sent Selecting Official Kersi Schroff

an e-mail attach the names and scores of thirty-four candidates for the position, including Plaintiff's.

Ms. Nichols stated that "[t]he numbers have changed somewhat" and requested that Mr. Schroff

inform her of how many candidates he wished to interview for the position. Mr. Schroff was

therefore aware that Ms. von Muhlenbrock applied for the position when he set the cutoff score for

interview just one point higher than Plaintiff's score.

Mr. Schroff's sworn affidavit dated December 14, 2004, provided to investigator Paul Greenberg,

states that "Ms. Nichols provided the Selecting Panel with the total number of applicants who met

the minimal qualifications, and also the raw scores of each of the qualified applicants. This

list, however, *did not include the names of any of the applicants – just their scores.*" (emphasis

added). This statement is untrue as per the January 30, 2003 e-mail from Ms. Nichols to Mr. Schroff

attaching the names of the qualified applicants, including Plaintiff's, were listed.

The rules and procedures of the Library of Congress Merit Selection and Promotion Plan of June 19,

2001 were not followed in the selection process for this position. The LCMSPP states that the

automated system should generate a list of the top seven applicants plus tied scores for interview

referral purposes. However, the Selecting Official may request a larger pool *prior* to receiving the

referral list. All referrals should be based on the automated system results. Here, the Selecting

Official determined the number of applicants he wanted to interview only *after* reviewing a list of all

thirty-four minimally qualified candidates, including their names and scores.

15.    Identify each and every fact, state the basis for, and list all evidence you have in your
       possession which supports your contention that "the facts demonstrate that the rules
       governing the merit selection process were not complied by the Human Resources
       ·Department that had to verify the accuracy of the application of Gustavo Guerra," as alleged
       in Paragraph 20B of your complaint.

Plaintiff understands that Dr. Hsia has since retired.

18.   Identify each and every fact, state the basis for, and list all evidence you have in your possession which supports your contention that the online application completed by you, dated January 19, 2003 is "different in the self-rating KSA's choices and design than the one provided by the Library of Congress during the investigations" and "affected" your "score negatively" as alleged in Paragraph 20D of your complaint.

**Answer**: Plaintiff recalls that the KSA choices were listed in her application provided by the LOC during the investigation into her informal EEO complaint against the LOC in 2003 differs from that of her original online application. Plaintiff's original online application has been misplaced. On September 1, 2003, Plaintiff mailed the original online application to Ms. Weiss, who represented Plaintiff during the 2003 investigation into her informal EEO complaint against the LOC. Ms. Weiss provided the original application to investigator Paul Greenberg in Plaintiff's presence in November 2004 and since then it has been lost.

Additionally, on January 30, 2003, Ms. Nichols sent Mr. Schroff an e-mail attaching the names and scores of thirty-four qualified candidates for the position, including Plaintiff's, and stated that "[t]he numbers have changed somewhat."

19.   Please state whether you have submitted insurance claims with respect to any of the injuries you allege in this lawsuit. If so, please provide the name, address and telephone number of the insurance company or companies in question; the date on which you submitted each claim; the claim number for each such claim; and the result of each such claim.

**Answer:** Plaintiff has not submitted any such insurance claim.

20.   Please identify each and every administrative complaint, charge of employment discrimination, or lawsuit you have filed at any time. For each such complaint or charge or lawsuit, please provide, as appropriate: the case name; the civil action number; the court or other forum in which the complaint or charge or lawsuit was filed; the date on which you filed the complaint or charge or lawsuit; the name and address of the employer or other party against whom you filed the complaint or charge or lawsuit; the complaint or charge number; describe the allegations you made; and describe the result and disposition of the complaint or charge, including whether the complaint or charge or lawsuit was dismissed or whether you obtained a settlement, and if so, the amount thereof.

**Answer:** Plaintiff objects to this interrogatory on the grounds that it is overly broad and not

reasonably calculated to lead to discoverable evidence. Notwithstanding and without waiving such

objection, in 1982, Plaintiff lodged a sexual harassment complaint against Dr. Medina with Ms.

Doris E. Pierce of the LOC Staff Relations Office. In 1984, Plaintiff filed a complaint of

discrimination on the basis of gender discrimination at the Equal Employment Opportunity Office,

LOC, EEO Case No. 84-67 on the basis of Dr. Medina and LOC's failure to promote her on the basis

of gender. The EEO case was not resolved and evolved into *Nguyen et al. v. Boorstin*, Civil Action

No. 85-1786, which was filed in 1985 in the United States District Court for the District of

Columbia. This case was settled pursuant to the Consent Decree, Settlement Agreement and

Stipulation of Dismissal entered into on January 10, 1986. The settlement considered Plaintiff's

promotion and recovery of attorney's fees.

On July 17, 2003, Plaintiff filed an informal EEO complaint of discrimination based on retaliation

with the LOC Equal Opportunity Office, EEO Case #03-38, for the LOC's failure to select her for

the Foreign Law Specialist position in 2003, advertised at Vacancy Announcement No. 020307, on

the basis of her prior participation in the 1985 gender discrimination lawsuit against the LOC. On

February 19, 2004, Plaintiff filed a formal EEO complaint for non-selection based on retaliation for

filing an EEO complaint and her participation in the 1985 gender discrimination lawsuit against the

LOC.

21.    Please describe in detail any mental, psychological, or emotional distress you have suffered
       since 1990 and specify: (a) each and every way that emotional distress has manifested itself;
       (b) any and all psychological trauma you allege you have suffered; (c) any and all physical
       symptoms you allege that you have suffered as a result of that distress; and (d) any treatment
       you have received for that distress or trauma, by which medical providers, and on which
       dates.

**Answer**: Plaintiff objects to this interrogatory on the grounds that it is vague, overly broad and not

reasonably calculated to lead to discoverable evidence. Notwithstanding this objection, Plaintiff has

suffered and will continue to suffer emotional distress, humiliation, frustration, and embarrassment

**Answer:** From a review of the selected applicant's Structured Interview Guide and application, it appears that the selected applicant overstated his credentials, particularly with respect to his Judicial Specialization Degree obtained from the Federal Judicial Institute since the Institute offers only training courses (as opposed to academic degrees). There is no indication in the applicant's application or interview documents that such information was ever verified by the LOC.

16.      Identify each and every fact, state the basis for, and list all evidence you have in your possession which supports your contention that the selecting "[p]anel did not ask [for] the required documentation and Gustavo Guerra obtained a high score rating by being untruthful," as alleged in Paragraph 20B of your complaint.

**Answer:** Vacancy Announcement No. 020307 established that, at the interview, applicants should present their certification to practice law, bar membership and college transcripts. However, there is no indication in the Structured Interview Guide for the selected applicant that such information was presented or requested.

17.      Identify each and every fact, state the basis for, and list all evidence you have in your possession which supports your contentions that Dr. Tao-Tia Hsia, the former chief of the Far Eastern Law Division, served on the selection panel, discriminated against Phuong Khanh Thi Nguyen, and "knowing of the role of Gisela Von Muhlenbrock in the Civil Action suit he cannot be considered a neutral member in the Selection Panel, especially if he knew he would retire soon, thus had available a blanket of impunity" as alleged in Paragraph 20C of your complaint.

**Answer:** Upon information and belief, a co-plaintiff (Phuong Khan Thi Nguyen) in Plaintiff's gender discrimination action against the LOC in 1985 had been transferred, in 1996, from the Far Eastern Law Division of the LOC to the Research and Reference Division, because she had been working in a hostile environment. Ms. Nguyen had alleged gender discrimination against the LOC in 1985 on the basis, in part, of the actions of her supervisor at the time, Dr. Hsia.

According to LOC records provided to Plaintiff during the investigation into Plaintiff's informal EEO complaint in 2003, Dr. Hsia was a member of the Selection Panel for Vacancy Announcement No. 020307.

as a direct result of the LOC's unlawful actions as alleged in the Complaint.

22.    Please provide an itemized account of each and every pecuniary loss and expense you claim to have suffered as a result of the alleged discrimination and/or retaliation and/or violations of law and/or violations of settlement agreements and/or LOC policies which you allege in your Complaint, including but not limiting your response to: out-of-pocket expenses, lost wages, benefits, expected wages, medical expenses, compensatory, liquidated damages, consequential damages, loss of reputation, pain and suffering, attorney's fees. Please include in your response the dates on which each loss or expense was incurred.

**Answer:** Plaintiff objects to this interrogatory on the grounds that it is premature as discovery is

ongoing and the Plaintiff does not yet have all documents necessary from the Defendant to

accurately calculate its full damages on this matter. Notwithstanding and without waiving such

objection, Plaintiff has lost the wages and benefits that she would have received as a Foreign Law

Specialist if she had not been retaliated against by the LOC, as well as attorney's fees incurred in

bringing EEO complaints, and this action, against the LOC.

23.    If you sought or received unemployment benefits at any time since 1988, please state the amount of unemployment compensation you received, the duration during which you received unemployment compensation, the employment office where you filed for unemployment benefits, and the reasons you provided to the unemployment office for being released from LOC.

**Answer:** Plaintiff has not sought or received unemployment benefits since 1988.

24.    Please state any and all positions at LOC to which you applied, including the official title of the position, salary, whether you responded to an announcement, the date of the announcement, the date of your application, the name of the office or person to whom you applied, whether you submitted an SF-171 or other application, and the results of that application.

**Answer:** On April 21, 1980, Plaintiff applied for a Foreign Law Specialist position advertised in

The Washington Post. The position was located in the Law Library, LOC, Hispanic Law Division,

this was headed by Dr. Medina. Plaintiff filled out an SF-171 application. The salary was the one

corresponding to a GS-12 at that time. Plaintiff was hired for this position on February 2, 1981 after

a hiring freeze.

In 1991, Plaintiff was unable to apply for an opening of the same position because Dr. Medina

24

incorrectly informed Plaintiff that the position had been temporarily filled and the posting expired.

In 2003, the LOC posted a Latin American Analyst position on its website at Vacancy

Announcement No. 0200223. Plaintiff applied for this position, and was not selected.

In 2003, the LOC posted a Foreign Law Specialist position on its website at Vacancy Announcement

No. 020307. Plaintiff applied for this position online on January 19, 2003, and was not selected.

25.   Please state your employment history (including temporary and part-time employment),
      identifying the names, addresses, and telephone numbers of each of your employers from
      1988 to the present, the positions you held at each place of employment, the dates of your
      employment, the names of your immediate supervisors, and stating the number of hours
      worked, the compensation you received, and the reasons that you left, for each position you
      identify.

**Answer**: From 1990 to 1994, Plaintiff served as Chief of Staff and Acting Under Secretary of

Justice in President Aylwin's administration in Chile. This was a full time position that paid a

yearly salary of US$16,223 per year. At the end of the administration, Plaintiff left the position

since she had been a political appointee.

From 1994 to 1995, Plaintiff was a Senior Fellow with the Orville H. Schell Jr. Center for

International Human Rights at Yale Law School in New Haven, CT. At that time, Harold Hongju

Koh was the Director.

Plaintiff consulted on a three year project (dates unknown) on civil-military relations that

included issue identification, defense policy and military justice for the National Democratic

Institute for International Affairs, and Centro de Estudios Estratégicos de Nicaragua (Managua),

2030 M Street N.W., 5th Floor, Washington, DC, 20036-3306, (202) 728-5500.

In February 1998, Plaintiff was a consultant to the AID-National Center for State Courts,

providing technical support for the Attorney General's Office of Nicaragua in the drafting of its

internal regulation. 1700 North Moore Street, Arlington, VA 22213, (703) 841-0200.

In April 1998, Plaintiff was a consultant to AID-CEPPRO-Paraguay, Seminar on Civil -Military

Relations at the Colegio Nacional de Guerra, Asunción.  Plaintiff conducted lectures and panels on the development of a National Defense Policy and related issues.  U.S Agency for International Development, 320 21st Street, Washington, DC, 20523-3306, (202) 712-000.

From September to October 1998, Plaintiff was a consultant to AID-DAI, providing technical assistance to the Probity Unit of the Supreme Court of El Salvador on illegal enrichment in public service.  Development Alternatives International, 7600 Wisconsin Ave, N.W. # 200, Washington, DC, 20814, (301) 771-7600.

In June 2004, Plaintiff provided consultant work to the Treasury Department of Chile on drafting a law creating a system of internal auditing and rewarding performance in Government. Ministerio de Hacienda, Teatinos 120, (562) 473-2000.



I hereby _____ interrogatory responses are
true and corre_____

_____ brock

Dated: Augus___

_____

Pm_____ /kAS

_____ Bar No. 416614)
_____ D.C. Bar No. 975232)
_____ court)
_____ LLP
_____ W
_____ 0006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFTY that service of the foregoing Plaintiff Gisela von Muhlenbrock's

Responses to Defendant's First Set of Interrogatories was served by first class, postage prepaid mail,

this 9th day of August, 2007 to:

Jeffrey A. Taylor
Rudolph Contreras
Jonathan C. Brumer
United States Attorney's Office
555 4th Street, N.W., Room E4815
Washington, D.C. 20530


Kelly A. Schmidt