**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GISELA VON MUHLENBROCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-1921 (PLF) |
| v. ) | |
| ) | |
| JAMES H. BILLINGTON, ) | |
| Librarian of Congress, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Gisela von Muhlenbrock, by and through undersigned counsel, hereby submits

her Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary

Judgment.

## I.    INTRODUCTION

Defendant's Motion for Summary Judgment should be denied because there is ample

evidence in the record from which a reasonable factfinder could determine that Plaintiff has met

her minimal burden of establishing a *prima facie* case of discrimination, and that, assuming

Defendant has articulated any legitimate, non-discriminatory reasons for its failure to select

Plaintiff, such reasons were simply pretext for discrimination.  Additionally, Defendant has

failed to identify any such legitimate, non-discriminatory reasons for its failure to select Plaintiff,

and therefore has failed to carry its far more substantial burden to show there are no genuine

issues of material fact.

Now that discovery is complete, the essential facts alleged by the Plaintiff have been

confirmed.  The Library of Congress repeatedly violated its own internal procedures for

interviewing and hiring job applicants, and the *only* party prejudiced by these violations was

Gisela von Muhlenbrock.  When given the full opportunity to articulate a non-discriminatory

motive for its actions, the Library witnesses offer wildly contradictory explanations for its failure

to obey its own procedures.  None of the explanations make logical sense.  The fact remains that

the most reasonable explanation for the Library's actions is that its personnel were aware of the

Plaintiff's prior discrimination claim, and excluded her from consideration for the open job

position because of that prior claim.  Finally, the Defendant has lost, misplaced or destroyed

critical documentary evidence related to this matter.  Plaintiff is entitled to a presumption that the

destroyed evidence would have supported her allegations and thus summary judgment is

inappropriate on that ground alone.

## II.    STATEMENT OF FACTS

Plaintiff, Gisela von Muhlenbrock, has been certified to practice law in Chile since 1974.

*See* Ex. 1.  She received a Masters of International Public Policy from Johns Hopkins

University's School of Advanced International Studies in 1988.  *See* Ex. 2; Ex. 3 (von

Muhlenbrock Dep. at 9:18-11:16).  Plaintiff has "[e]xperience in the formulation, analysis and

evaluation of public policy [;] [e]xpertise in International and Latin American law, civil-military

relations, democratic governance, legislatures and administration of justice[; and] [p]roficiency

in comparative research, oral and written analysis, legislative drafting and legislative information

systems."  Ex. 4.  She is also proficient in Spanish, German and French, and reads Portuguese

and Italian. *See* Ex. 4; Ex. 3 (von Muhlenbrock Dep. at 15:23-16:17).

Plaintiff was the Chief of Staff and Counsel to the Minister of Justice in Chile from 1990

to 1994.  *See* Ex. 4; Ex. 3 (von Muhlenbrock Dep. 12:1-6); Ex. 5; Ex. 6, p. 4.  She has also

performed consulting work for various organizations and agencies, including the US Agency for

International Development and the National Democratic Institute for International Affairs. *Id.*; Ex. 3 (von Muhlenbrock Dep. at 12:7-25); Ex. 7.

Plaintiff was a Foreign Law Specialist in the Hispanic Law Division of the Law Library of the Library of Congress (the "Law Library") from 1981 to 1989.   Ex. 3 (von Muhlenbrock Dep. at 11:17-25; 14:3-5, 20-22). As a Foreign Law Specialist, Ms. von Muhlenbrock "prepared in-depth studies for the U.S. Congress concerning relevant constitutional, legal and political issues related to Costa Rica, El Salvador, Guatemala, Honduras, Nicaragua, Panama, Venezuela and Chile." Ex. 4. In 1984, she received a Meritorious Service Commendation from the Library of Congress. *Id.*; Exh. 8.

### A.    *Complaints and the 1985 Lawsuit*

Plaintiff's supervisor during the time she was employed at the Law Library was Dr. Rubens Medina, then Chief of the Hispanic Law Division and current Law Librarian of the Library of Congress. *See* Ex. 3 (von Muhlenbrock Dep. at 14:14-16, 17:9-17, 20:7-11); Ex. 9 (Medina Dep. at 20:7-15; 48:21-49:2). In 1982, Plaintiff filed a complaint alleging sexual harassment by Dr. Medina with the Law Library's Labor Relations Office. *See* Ex. 3 (von Muhlenbrock Dep. at 19:25-20:6). In 1984, Plaintiff filed an EEO complaint against Dr. Medina alleging discrimination on the basis of sex. *See* Ex. 10. In 1985, Plaintiff and two colleagues filed a complaint against the Library of Congress in the United States District Court for the District of Columbia alleging discrimination on the basis of sex and sexual harassment (the "1985 Lawsuit"). *See* Ex. 11. Ms. von Muhlenbrock alleged that her then supervisor, Dr. Medina, had engaged in such discrimination and harassment.[1] *Id.* A co-plaintiff in this action,

---

[1]    Q. Did you make remarks in the presence of Gisela von Muhlenbrock about her physical appearance?
   *A. I don't recall anything specific.*

Phuong Khanh Thi Nguyen, alleged that her then supervisor, and Chief of the Far Eastern Division of the Law Library, Dr. Tao-Tai Hsia, engaged in such discrimination and harassment. *Id.* In January 1986, the parties settled this lawsuit. *See* Ex. 12. In 1989, Ms. von Muhlenbrock resigned from the Law Library. *See* Ex. 3 (von Muhlenbrock Dep. at 26:23-27:23).

### B.    *Ms. von Muhlenbrock's Attempts to Return to the Law Library*

In January 1991, Plaintiff contacted Dr. Medina to request an application for a position at the Law Library. *Id.* at 28:24-29:25. Dr. Medina informed Ms. von Muhlenbrock that the position had been filled, and stated that he would not send Ms. von Muhlenbrock an application for said position. *Id.*; *Id.* at 30:7-13. Ms. von Muhlenbrock also sent letters to Ms. Katty Price and Dr. Medina on February 22, 1991, expressing her interest in returning to work in the Law Library and requesting information concerning two vacant positions in the Hispanic Law Division. *Id.* at 29:10-20, 30:7-15, 30:22-23; Ex. 13. Ms. von Muhlenbrock did not receive a response to her letters. *See* Ex. 3 (von Muhlenbrock Dep. at 30:20-21). Accordingly, Ms. von Muhlenbrock followed-up with a letter to the Librarian of Congress. *Id.* at 29:24-31:10. Nonetheless, Dr. Medina testified that he did not recall any such letters or phone calls. *See* Ex. 9 (Medina Dep. at 44:13-45:20, 49:6-14).

### C.    *Vacancy Announcement 020307*

Dr. Medina approved a Vacancy Announcement Request and proposal for posting of a Foreign Law Specialist position in the Western Law Division[2] of the Law Library (the "Position") at Vacancy Announcement Number 020307 (the "Vacancy Announcement"), on

---

Ex. 9 (Medina Dep. at 35:18-19).

[2] The Hispanic Law Division merged into the Western Law Division, which was created in the early 1990s. *See* Ex. 19 (Shroff Dep. at 42:3-43:15).

November 21, 2002. *See* Ex. 14; Ex. 15; Ex. 9 (Medina Dep. at 63:18-64:12). The Position

"relate[d] to the laws of Spanish or Portuguese language countries, and other assigned

jurisdictions." Ex. 15.

Dr. Medina testified that he didn't recall having *any* discussions about the Position. *See*

Ex. 9 (Medina Dep. at 64:17-21, 67:17-68:6). Nonetheless, Mr. Kersi Shroff – the Selecting

Official for the Position – testified that he had *two or three discussions* with Dr. Medina (among

others) regarding the Position. *See* Ex. 16 (Shroff Dep. at 71:21-75:3). Dr. Medina has also

asserted that he did not participate in developing the position description. *See* Ex. 9 (Medina

Dep. at 72:16-73:5); Ex. 17; *see also* Ex. 18.[3] However, Mr. Shroff has asserted that Dr. Medina

did provide input in formulating the position, and that he approved the position description. *See*

Ex. 16 (Shroff Dep. at 71:21-75:3); Ex. 19.

Applicants for the Position were assigned scores based on their responses to the

Position's knowledge, skills, and abilities (the "KSAs"), which were "designed to measure [the

applicant's] experience and training in relation to the requirements of [the position]." Ex. 15; *see*

*also* Ex. 20 (Nichols Dep. at 120:3-11). The KSAs for the Position were the following: ability to

communicate orally in providing foreign legal services; ability to communicate in writing in

providing foreign legal services; ability to meet and effectively deal with others in providing

foreign legal services; ability to develop and maintain legal collections; knowledge of and

competency in the laws of Spanish/Portuguese language jurisdictions; and ability to convey legal

concepts in the English language. *See* Ex. 15; Ex. 4.

### D.    *Plaintiff Applies, and is not Selected For, the Position*

On January 23, 2003, Plaintiff applied for the Position online. *See* Ex. 4; Ex. 15. On

---

[3] At his deposition, Dr. Medina denied any involvement in the EEOC investigation into this matter, but admits his

May 5, 2003, Ms. von Muhlenbrock was informed that she had not been selected for the Position. *See* Ex. 21. On July 9, 2003, Ms. von Muhlenbrock was told that she had not been selected for the Position because "[her] score was 96 and the cut-off score for referral for interview was 97." Ex. 22. On July 17, 2003 Plaintiff filed an informal complaint of discrimination with the Library's Equal Employment Opportunity Complaints Office. *See* Ex. 23 ¶ 20. Ms. von Muhlenbrock filed a formal EEO complaint for retaliation on February 19, 2004. Ex. 24.

### E.    *Basis for Selecting Applicants to Interview for the Position*

A panel of three subject matter experts was responsible for filling the Position. *See* Ex. 16 (Shroff Dep. at 57:8-13). The members of the panel were: Mr. Shroff; Dr. Hsia; and Ms. Ruth Levush. *Id.* at 57:8-58:4. Mr. Shroff, Chief of the Western Law Division, was the Selecting Official for the Position. *Id.* at 56:7-20, 62:8. He has known Ms. von Muhlenbrock since the early 1980s when they were colleagues at the Law Library. *Id.* at 28:16-29:1. Mr. Shroff was aware that Ms. von Muhlenbrock had filed a sexual discrimination complaint against the Library of Congress. *Id.* at 34:20-35:14. Mr. Shroff's boss is Dr. Medina. *Id.* at 19:6-16. A co-plaintiff in the 1985 Lawsuit alleged that Dr. Hsia, Chief of the Eastern Law Division at the time the Position was being filled, had discriminated against her. *Id.* at 42:6-15, 57:14-58:4; Ex. 11. Dr. Hsia – as chief of the division that was not hiring – selected Ms. Levush to be a panel member. *See* Ex. 16 (Shroff Dep. at 57:14-58:4).

Mr. Shroff testified that "generally . . . we wanted to see the top five percent of the candidates . . .". *Id.* at 90:18-20. The top five percent of candidates for this Position included those with scores of 96 and higher, such as Ms. von Muhlenbrock who was among the list of

---

signature is on his Affidavit. *See* Exh. 9 (Medina Dep. at 94:10-96:17).

qualified candidates for the Position. *See* Ex. 25.[4] However, the selecting panel did not select the top 5% of candidates to interview for the Position. *See* Ex. 26.

There is ample conflicting evidence regarding how the selecting official or panel determined which applicants to interview for the Position. The testimony of Mr. Shroff and Ms. Billie Nichols (Human Resources Specialist) – even internally – is contradictory in their assertions that the panel, or Mr. Shroff, decided to interview the top ten applicants, or rather, that it was a certain score or percentage point that was the alleged deciding factor. *See* Ex. 20 (Nichols Dep. at 59:16-60:2, 61:5-7) (top ten); *see also* Ex. 16 (Shroff Dep. at 82:10-12) (top ten); *compare Id.* at 85:13-86:2 (top 3%); *Id.* at 85:13-86:2 (score of 98); *Id.* at 86:17-20 (score of 97); Ex. 20 (Nichols Dep. at 59:16-60:2) (score of 97); *see also* Ex. 30.

The Library of Congress Merit Selection and Promotion Plan (the "Plan") requires that "[t]he automated system generate[] a list of the top seven applicants plus tied scores" for interview referral. Ex. 29 Art. VI.D.1.d. Ms. Nichols testified that the Selecting Official indicated that he wanted to interview the top ten applicants because the Plan's requirement that the top seven applicants plus ties be interviewed resulted in ten applicants.[5] *See* Ex. 20 (Nichols Dep. at 61:5-7) ("[The Selecting Official, Mr. Shroff] knew that the tied scores had to be referred as well. That's why he indicated that [he] wanted to interview the top ten."); *Id.* at 59:16-61:7. However, Mr. Shroff was *not even aware* that the Plan required he interview the top seven

---

[4] This attachment, forwarded to Mr. Shroff also incorrectly states the number of applicants who scored a 96, the same as Ms. von Muhlenbrock. *See* Ex. 27; *compare* Ex. 25.

Additionally, the KSA responses of an applicant with the exact same KSA responses as Ms. von Muhlenbrock were apparently overridden. *See* Ex. 4; *compare* Ex. 28. None of Defendant's witnesses could provide an explanation for said overriding. *See* Ex. 9 (Medina Dep. at 62:7-9); Ex. 20 (Nichols Dep. at 148:11-21); Ex. 16 (Shroff Dep. at 109:5-110:12).

[5] This is incorrect. *See* Ex. 25. Applying the Plan's requirements, the top seven applicants plus ties would not have even resulted in an interview of the top ten applicants. *Id.*

applicants *plus* ties, as he testified that the Plan required he interview the top seven applicants *excluding* ties. *See* Ex. 16 (Shroff Dep. at 82:15-84:2); *compare* Ex. 20 (Nichols Dep. at 67:10-68:14).[6] Mr. Shroff, alternatively, testified that the panel *decided* which applicants to interview, rather than that it did so as a requirement. *See* Ex. 16 (Shroff Dep. at 81:10-83:4).

Furthermore, the Defendant has lost or destroyed the initial communication, including an attachment, between Mr. Shroff and Ms. Nichols regarding the basis for selecting applicants to interview for the Position. *See* Ex. 20 (Nichols Dep. at 59:16-60:2, 74:18-76:6); Ex. 31 ¶ 3. Tellingly, Mr. Shroff testified that he did not recall any such communication or attachment. *See* Ex. 16 (Shroff Dep. at 96:12-97:14).

### F.    *Defendant's Departure From its Policies and Procedures, and Destruction of, or Failure to Maintain, Documents*

The Defendant failed to follow its policies and procedures in filling the Position. Specifically, the Plan requires, in part, that (1)"the automated system [generate] a list of the top seven applicants plus tied scores . . .", (2) "the list of applicants referred . . . be in alphabetical order with no reference to the automated system results . . .", (3) "[a]t the conclusion of the selection process, a report will be compiled that will include documentation developed and maintained at each step of the Library's merit selection process . . .", and (4) "if a grievance or other complaint or dispute is filed regarding the action, [the merit selection] file shall be maintained until the conclusion of the case, including any appeals." Ex. 29, Arts. VI. D.1.d & VIII.A.[7]

---

[6] Among Mr. Shroff's responsibilities, as Selecting Official, was to "[apply] the principles and requirements of [the] Plan . . .". Ex. 29, Art. IV.

[7] The Defendant is also remarkably unaware of its own policies and procedures. Mr. Shroff did not know these were requirements under the Plan, despite it being his responsibility to ensure that the Plan was followed. *See* Ex. 16 (Shroff Dep. at 102:4-107:9); Ex. 29, Art. IV. Dr. Medina testified that he had no recollection of *ever* reading the

The Defendant failed to comply with any of these requirements. The "automated" system did not generate a list of the top seven applicants plus tied scores. *See* Ex. 20 (Nichols Dep. at 67:10-68:4). The interview referral list forwarded to Mr. Shroff by Ms. Nichols ranked the interviewees by score, as opposed to alphabetical order, as required. *See* Ex. 26. The Defendant did not compile a report at the conclusion of the selection process. *See* Ex. 20 (Nichols Dep. at 89:10-17); Ex. 16 (Shroff Dep. at 106:6-107:9 ).

Additionally, the Defendant failed to maintain its merit selection files until the conclusion of this dispute. Ex. 31 ¶ 3. In August or September 2007 – and, in any event, clearly prior to the conclusion of this action – Ms. Nichols discovered that documents regarding the Position's selection were missing from the merit files. *See* Ex. 20 (Nichols Dep. at 74:18-78:10); Ex. 31 ¶ 3.

Defendant also destroyed or failed to maintain electronic documents despite Ms. von Muhlenbrock's informal complaint of discrimination on July 17, 2003; formal complaint of discrimination on February 19, 2004; and the commencement of this action on September 19, 2005. *See* Ex. 32; Ex. 23; Ex. 24; *see also* Def.'s Mem., p. 3. According to Defendant, because "in 2003, it was the Library's policy to maintain back-up tapes for one year. . . the *earliest* data the Library has on the back-up tapes . . used by Ms. Nichols and Mr. Shroff is *December 27, 2004*." Ex. 32 (emphasis added).

Furthermore, Dr. Medina, the Law Librarian, stated that, although he was aware of a request for documentation, he had never searched his documents nor reviewed emails that might relate to the substance of the lawsuit. *See* Ex. 9 (Medina Dep. at 13:14-19). He has not handled his e-mails any differently since the lawsuit commenced, and is not aware of any special

policies, and did not know what was in them. *See* Ex. 9 (Medina Dep. at 88:7-91:12).

treatment of documents once a lawsuit has commenced. *Id.* at 14:9-21. Dr. Medina has never received any instruction to take any action with respect to documentation when such an action is filed. *Id.* at 87:21-88:6.

### G.    Gustavo Guerra

Mr. Shroff selected and recommended Mr. Gustavo Guerra for the Position. *See* Ex. 9 (Medina Dep. at 76:21-77:12). According to his application for the Position, Mr. Guerra's education and experience can be described as follows: Mr. Guerra received the equivalent of his J.D. in Mexico in 1995; he worked as a Law Clerk in Mexico from 1993 to 2001; he served as a legal intern with the Federal Communications Commission; received a Masters in International Legal Studies from the Georgetown University Law Center; and is proficient in English and Spanish. *See* Ex. 33.

Mr. Shroff testified that he selected and recommended Mr. Guerra for the Position because, in part, of "[h]is Mexican law qualification . . .". Ex. 16 (Shroff Dep. at 115:12-16); *Id.* at 120:9 (stating that Mr. Guerra represented that he was an "[a]ttorney, licensed in Mexico 1995"); *see also* Ex. 34, p.10. However, there is no evidence in the record that Mr. Guerra is licensed to practice law in Mexico. Pursuant to the Vacancy Announcement, "applicants certified to practice law" were to provide "evidence of certification . . . at the interview." Ex. 15. There is no evidence in the record that Mr. Guerra ever provided, or that the Defendant ever requested, such evidence of certification.[8] The Position also required a "knowledge of and competency in the laws of Spanish/Portuguese language jurisdictions." Ex. 15. However, Mr. Shroff's interview notes reflect that Mr. Guerra had *"[n]o experience with Portuguese laws . . .".* Ex. 16 (Shroff Dep. at 124:4-6) (emphasis added); *see* Ex. 34, p.18.

---

[8] Plaintiff repeatedly requested such evidence in the discovery phase of this litigation. *See* Ex. 36.

Mr. Shroff also testified that he selected Mr. Guerra, in part, on the basis of his interview because he "would be able . . . to work according to the manner in which we expected the person to work, cooperatively and taking on assignments as they were given." Ex. 16 (Shroff Dep. at 115:18-116:1).

On May 1, 2003, Dr. Medina approved the selection and recommendation of Mr. Guerra by Mr. Shroff for the Position. *See* Ex. 9 (Medina Dep. at 76:21-77:12); Ex. 35.

### III.    APPLICABLE LAW

#### A.    Summary Judgment

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The evidence is viewed in the light most favorable to Plaintiff, and all reasonable inferences are drawn in her favor. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Howard v. D.C. Pub. Sch.*, 501 F. Supp. 2d 116, 122 (D.D.C. 2007) (denying defendant's motion for summary judgment of plaintiff's Title VII claims). "The court's function is not to try disputed issues of fact, but only to ascertain whether such an issue is present, and any doubt on that score is to be resolved against the movant." *Abraham v. Graphic Arts International Union*, 660 F.2d 811, 814 (D.C. Cir. 1981).

"[B]ecause summary judgment is a drastic remedy, courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue." *Greenberg v. Food & Drug Admin.*, 803 F.2d 1213, 1216 (D.C. Cir. 1986*)*. "If the evidence presented is subject to conflicting interpretations, or reasonable persons might differ as to its significance, summary judgment is improper." *Id.*

### B.    Retaliation

Pursuant to Title VII of the Civil Rights Act of 1964, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees[9] ... because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). A claim for retaliation is governed by the following "burden-shifting mechanism: the plaintiff must first establish a prima facie case; if he meets that burden, the employer must articulate a legitimate non-retaliatory reason for its action; finally, the plaintiff has the ultimate burden of establishing that the reason asserted by the employer is pretext for retaliation." *Cones v. Shalala*, 199 F.3d 512, 520 (D.C. Cir. 2000).

The initial burden of establishing a *prima facie* case of retaliation is "not great, as the plaintiff need only establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001). To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in statutorily protected activity; (2) she was subject to an adverse employment action by her employer; and (3) the adverse action was causally related to the exercise of her rights. *See Cones*, 199 F.3d at 520.

### IV.    ARGUMENT

### A.    DEFENDANT ADMITS THAT PLAINTIFF CAN ESTABLISH TWO OF THREE ELEMENTS OF A *PRIMA FACIE* CASE OF RETALIATION

Nowhere in Defendant's motion does it contend that Plaintiff is unable to establish two of the three elements of a *prima facie* case of retaliation. First, Plaintiff undisputedly can establish

---

[9] The anti-retaliation provision of Title VII also protects job applicants from retaliation. *See Burlington v. Santa Fe Ry. V. White*, 126 S.Ct. 2405, 2408 (2006).

that she engaged in statutorily protected activity. In 1982, Plaintiff filed a complaint alleging

sexual harassment by Dr. Medina with the Law Library's Labor Relations Office. *See* Ex. 3 (von

Muhlenbrock Dep. at 19:25-20:6). In 1984, Plaintiff filed an EEO complaint against Dr. Medina

alleging discrimination on the basis of sex. Ex. 10. In 1985, Plaintiff and two colleagues filed a

complaint against the Library of Congress in the United States District Court for the District of

Columbia alleging discrimination on the basis of sex and sexual harassment. *See* Ex. 11.

Plaintiff's filing of EEOC complaints constitutes statutorily protected activity, *see e.g., Smith v.*

*District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005), as does the filing of a lawsuit on the

basis of discrimination, *see e.g. Rochon v. Gonzales*, 438 F.3d 1211, 1213 (D.C. Cir. 2006).

Second, Plaintiff can undisputedly establish that she was subject to an adverse personnel

action. Namely, on January 23, 2003, Plaintiff applied for the Position. *See* Ex. 4; Ex. 15.

Plaintiff was not selected for the Position. *See* Exh. 21. Plaintiff's non-selection for the Position

constitutes an adverse personnel action. *See Gipson v. Wells Fargo N.A.*, 460 F. Supp. 2d 15,

24-25 (D.D.C. 2006).

**B. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE WHETHER A CAUSAL CONNECTION EXISTS BETWEEN PLAINTIFF'S PROTECTED ACTIVITY AND DEFENDANT'S ADVERSE ACTION IS IN DISPUTE**

Although Defendant makes much of the lack of temporal proximity between the

protected activity and adverse personnel action here, "temporal proximity is 'not the only way to

establish a causal connection.'" *Medina v. District of Columbia*, 517 F. Supp. 2d 272, 288

(D.D.C. 2007) (citing *Pegues v. Meneta*, Civ. Action No. 04-2165, 2006 U.S. Dist. LEXIS

59118, at *22 (D.D.C. Aug. 22, 2006)); *see also Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31,

38 (1st Cir. 2003) ("Temporal proximity is but one method of proving retaliation[.]"). "[T]he

proffered evidence, looked at as a whole, may suffice to raise the inference" of discrimination. *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3rd Cir. 1997); *see also Buggs v. Powell*, 293 F. Supp. 2d 135, 149 (D.D.C. 2003) ("Here, the proffered evidence as a whole, when viewed in the light most favorable to plaintiff, creates an inference of retaliatory discrimination . . . even though its proximity to the protected activity would not alone support such an inference."); *see also Medina*, 517 F. Supp. 2d at 290 ("Looking at the evidence as a whole and taking into account the minimal burden plaintiff must overcome to establish a prima facie case of retaliation . . . the Court finds that plaintiff has met his burden . . . .").

Here, considering the evidence as a whole in the light most favorable to Ms. von Muhlenbrock, a reasonable fact-finder could infer retaliatory discrimination.  Plaintiff alleged in her 1985 Lawsuit, and prior EEOC activity, that her supervisor while she was employed at the Law Library from 1981 to 1989 - Dr. Medina – had sexually harassed and discriminated against her. *See* Ex. 3 (von Muhlenbrock Dep. at 14:14-16, 17:9-17, 19:25-20:6, 20:7-11); Ex. 9 (Medina Dep. at 20:7-15; 48:21-49:2); Ex. 10; Ex. 11.   When she attempted to regain employment at the Law Library in the 1990s, Dr. Medina refused to send her an application, and Defendant largely ignored her requests. *See* Ex. 3 (von Muhlenbrock Dep. at 28:24-29:5, 29:10-31:10); Ex. 13.  Dr. Medina, tellingly, denies any knowledge of said stated interest by Ms. von Muhlenbrock to return to the Law Library, despite documentary evidence to the contrary. *See* Ex. 9 (Medina Dep. at 44:13-45:20, 49:6-14); Ex. 13.

Additionally, it is undisputed that Dr. Medina was involved in the recruiting process for the Position for which Ms. von Muhlenbrock applied to the extent that – at the very least – he authorized recruiting for the Position and approved the hiring of Mr. Guerra as selected and recommended by Mr. Shroff, an employee under his direct supervision. *See* Ex. 14; Ex. 9

(Medina Dep. at 63:18-64:12, 76:21-77:7; Ex. 16 (Shroff Dep. at 19:6-16); Ex. 35. Although Dr.
Medina denies any further involvement in the hiring process, there is evidence in the record to
the contrary. *See* Ex. 9 (Medina Dep. at 64:17-21, 67:17-68:6, 72:16-73:5); Ex. 18. For
example, Mr. Shroff testified that he was involved in discussions with Dr. Medina regarding the
Position and position description. *See* Ex. 16 (Shroff Dep. at 71:21-75:3); Ex. 19.

Two of the three panel members – including the Selecting Official – responsible for
recruiting for the position had prior knowledge of Ms. von Muhlenbrock's protected activity.
*See* Ex. 16 (Shroff Dep. at 28:16-29:1, 34:20-35:14, 56:7-20, 57:8-58:4, 62:8); Ex. 11. Mr.
Shroff was a colleague of Ms. von Muhlenbrock when she was a Foreign Law Specialist at the
Law Library, and was aware that Ms. von Muhlenbrock had filed a sexual discrimination
complaint against the Library of Congress. *See* Ex. 16 (Shroff Dep. at 28:16-29:1, 34:20-35:14).
Dr. Hsia had allegedly discriminated against a co-plaintiff in Ms. von Muhlenbrock's 1985
Lawsuit. *See* Ex. 11. The third panel member, Ms. Levush, was selected by Dr. Hsia. *See* Ex.
16 (Shroff Dep. at 57:14-58:4).

There is ample conflicting evidence regarding the basis for selecting applicants to
interview for the Position (*i.e.* determining which applicants had "score[d] high enough", *i.e.*
Def.'s Mem., p. 7) which considered as a whole in the light most favorable to Plaintiff raise an
inference of a discriminatory motive. Mr. Shroff testified that he would generally want to
interview the top 5% of applicants, which would have included Plaintiff. *See* Ex. 16 (Shroff
Dep. at 90:18-20); Ex. 25 (List of Names). Yet, Defendant did not interview the top 5% of
applicants for this Position, and Defendant's witnesses provided numerous conflicting
explanations for such departure. *See* Ex. 26; Ex. 20 (Nichols Dep. at 59:16-60:2, 61:5-7) (top
ten); *see also* Ex. 16 (Shroff Dep. at 82:10-12) (top ten); *compare Id.* at 85:13-86:2 (top 3%); *Id.*

at 85:13-86:2 (score of 98); *Id.* at 86:17-20 (score of 97); Ex. 20 (Nichols Dep. at 59:16-60:2) (score of 97).

Defendant's witnesses contradicted one another – and themselves – in attempting to provide their basis for selecting applicants to interview for the Position, asserting at varying times that the decision was based upon a certain number of applicants, a cut-off score or a certain percentage. *Id.* Ms. Nichols testified that Mr. Shroff chose the applicants to interview based upon the requirements of the Plan, *i.e.* he interviewed the top ten applicants because the Plan required he do so under the top seven plus ties requirement. *See* Ex. 20 (Nichols Dep. at 59:16-61:7): Ex. 29. However, this is factually incorrect, and Mr. Shroff's testimony revealed that he was not even aware of what the Plan required. *See* Ex. 25; Ex. 16 (Shroff Dep. at 82:15-84:2). Mr. Shroff testified that the panel decided which applicants to interview, rather than that it did so as a requirement. Ex. 16 (Shroff Dep. at 81:10-83:4).

Additionally, an important piece of this puzzle is missing as the *Defendant has lost or destroyed the initial communication, including an attachment, between Mr. Shroff and Ms. Nichols* regarding the basis for selecting applicants to interview for the Position. *See* Ex. 20 (Nichols Dep. at 59:16-60:2, 74:18-76:6); Ex. 31 ¶ 3. Because this important initial communication is gone, it is impossible to verify the accuracy of Ms. Nichols' testimony regarding this communication, and whether, even if inadvertently, Ms. Nichols sent Mr. Shroff an attachment containing the names of the applicants. *See* Ex. 20 (Nichols Dep. at 80:14-81:1). Tellingly, Mr. Shroff does not recall any such communication or attachment. *See* Ex. 16 (Shroff Dep. at 96:12-97:14).

A reasonable factfinder could find that this and other instances of Defendant departing from its policies and procedures in filling the Position, and losing or destroying documents, raise

an inference of discrimination. As set forth *supra*, pp. 8-9, the Defendant departed from its policies and procedures contained in the Plan in the following ways: the "automated" system did not generate a list of the top seven applicants plus tied scores, *see* ex. 20 (Nichols Dep. at 67:10-68:4); the interview referral list forwarded to Mr. Shroff by Ms. Nichols ranked the interviewees by score, as opposed to alphabetical order, as required, *see* ex. 26; and the Defendant did not compile a report at the conclusion of the selection process. *See* Ex. 20 (Nichols Dep. at 89:10-17); Ex. 16 (Shroff Dep. at 106:6-107:9). The Defendant also failed to maintain its merit selection files until the conclusion of this dispute. *See* Ex. 20 (Nichols Dep. at 74:18-78:10); Ex. 31 ¶ 3.

Outrageously, Defendant destroyed or failed to maintain the electronic documents of, at least, Mr. Shroff and Ms. Nichols involving this matter despite being put on notice of an obligation to do so. *See* Ex. 32. Furthermore, Dr. Medina – the Defendant's Law Librarian – was oblivious to any obligation to maintain documents, and testified that he never received any instruction to do so. *See* Ex. 9 (Medina Dep. at 13:14-19, 14:9-21, 87:21-88:6). The *earliest* electronic documents of Mr. Schroff and Ms. Nichols, at least, on Defendant's backup tapes are from *December 27, 2004. Id.* This is seven months *after* Dr. Medina had already approved the selection and recommendation of Mr. Guerra for the Position. *See* Ex. 9 (Medina Dep. at 76:21-77:12); Ex. 35. Thus, all of, at least, Mr. Shroff and Ms. Nichols', electronic communications for the relevant time periods in this matter have been lost. Although Defendant asserts in the Declaration of Tom Kearns that the documents were destroyed because it was Defendant's policy in 2003 to maintain electronic documents for only one year, *see* Ex. 32, Defendant was put on notice of litigation involving this matter *within* that one year time frame, as Ms. von Muhlenbrock filed an informal complaint of discrimination in July 2003, and a formal complaint

- 17 -

in February 2004. *See* Ex. 23 ¶ 20; Ex. 24; *see also* Pl. Mem., p.3; *see, e.g. Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("[T]he duty to preserve evidence arose, *at the latest* . . . when [Plaintiff] filed her EEOC charge.") (emphasis added). Thus, Defendant had a duty to maintain said documents at the time they were destroyed. *Id.* Summary judgment is particularly inappropriate under such circumstances as Defendant's destruction of documents where it had a duty to preserve entitles Plaintiff to an inference of discrimination. *See Battochi v. Washington Hosp. Ctr.*, 581 A.2d 759 (D.C. 1990).

C. **DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO DEFENDANT'S ASSERTED REASONS FOR NON-SELECTION, AND WHETHER SUCH REASONS ARE PRETEXT**

Defendant's motion must fail as it has not clearly articulated any legitimate, non-discriminatory reason for its failure to select Plaintiff. *See* Def.'s Mem. pp. 7-8; *see also Cones*, 199 F.3d at 520 (stating that it is the employer's burden to articulate a legitimate, non-discriminatory reason for its action). The Defendant only asserts that "Defendant's legitimate, nondiscriminatory reasons for its selection determination for [the Position] are amply supported by the record . . .", and cites evidence from the record that it claims supports its reasons, without ever actually *identifying* such reasons. Def.'s Mem., pp. 7-8.

For purposes of opposing this motion, Plaintiff assumes that Defendant's alleged legitimate, non-discriminatory reasons for its failure to select Plaintiff are: "Plaintiff did not . . . score high enough to be referred to the selecting panel for an interview . . ."; and "[the] various appealing facets of the selectee's skills and experiences." Def.'s Mem. p. 7. However, as set forth *supra*, pp. 14 - 18, the question of *why* Plaintiff did not "score high enough" to be referred for an interview – as determined by Mr. Shroff and the selecting panel - is the very issue that

remains in dispute in this action. As established, *supra,* pp. 14-18, sufficient evidence exists to suggest that this purported explanation "[is] in fact a cover-up for a . . . discriminatory decision." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973).

With respect to "[the] various appealing facets of the selectee's skills and experiences", *see* Def. Mem. 7, Defendant has, notably, *not* proffered as a reason for their non-selection that Mr. Guerra was the most qualified candidate for the Position. *See, e.g., Gipson v. Wells Fargo N.A.*, 460 F. Supp. 2d 15, 25 (D.D.C. 2006) (proffering that "[selectee] was the most qualified candidate for the position."). Accordingly, Plaintiff is not required, as Defendant asserts, to produce evidence of superior qualifications as pretext, *see* Pl. Mem. 8-9, and Plaintiff does not rely solely on qualifications as evidence of pretext. As established, *supra,* pp. 14-18, there is ample evidence in the record to allow a reasonable factfinder to determine that Defendant's asserted reasons – whatever they may be – are pretext for discrimination.

Nonetheless, even if Defendant had asserted that Mr. Guerra was the most qualified for the Position, and Plaintiff were required to rebut such an explanation for non-selection with qualifications evidence, there is sufficient evidence in the record to allow a factfinder to determine that "a reasonable employer would have found [Ms. von Muhlenbrock] significantly better qualified for the job." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998). Accordingly, "the factfinder can legitimately infer that [Defendant] selected [Mr. Guerra,] a less qualified candidate – something that employer's do not usually do [–on the basis of some other strong consideration, such as discrimination[.]" *Id.* Ms. von Muhlenbrock's extensive background and experience includes: certification to practice law in Chile for *thirty* years; nearly a decade as a Foreign Law Specialist in the Law Library – the very Position that is the subject of this dispute; Chief of Staff and Counsel to Minister of Justice in Chile; vast

language skills, including Spanish, German, French, Portuguese and Italian; expertise in Latin

American and international law; expertise with legislative information systems; and a

proficiency in comparative research, oral and written analysis. *See supra*, pp. 2-3.

There is no evidence in the record that Mr. Guerra has *ever* been certified to practice law

anywhere.[10] *See supra*, pp. 10-11. He graduated from law school in Mexico in 1995, and had

just eight years of experience as a Law Clerk in Mexico at the time he applied for the Position.

*Id.* He has no experience with Portuguese laws, and his language skills include only Spanish and

English. *Id.* Despite Plaintiff's repeated requests for evidence of Guerra's certification to

practice law, Defendant never produced such certification. *See* Ex. 36. Accordingly, a

reasonable fact finder could determine that Ms. von Muhlenbrock was significantly better

qualified for the job.

Furthermore, as in *Gipson*, 460 F. Supp. 2d at 20-21, Mr. Shroff asserted that Mr.

Guerra's performance during the interview process provided a basis for his selection. Mr. Shroff

testified that he selected Mr. Guerra, in part, on the basis of his interview because he "would be

able . . . to work according to the manner in which we expected the person to work,

cooperatively and taking on assignments as they were given." Ex. 16 (Shroff Dep. at 115:18-

116:1).

In *Gipson*, 460 F. Supp. 2d at 20-21, Defendant stated that it relied, in part, on the

selectee's "performance during the interview process" for making its selection. The court found

that "[t]hough an employer is certainly free to consider other, non-objective factors in its hiring

decision, the D.C. Circuit has warned that 'explanations that rely heavily on subjective

---

[10] Despite a requirement in the Vacancy Announcement that applicants certified to practice law were required to bring said evidence to the interview, *see* ex. 15, there is no evidence in the record that Mr. Guerra did so or that Defendant ever requested he do so.

considerations' warrant closer attention. . . . '[A]n employer's strong reliance on subjective feelings about the candidates may mask discrimination.'" *Gipson*, 460 F. Supp. 2d at 21 (citing *Aka*, 156 F.3d at 1298). Accordingly, the court in *Gipson*, 460 F. Supp. 2d at 21-22, found that "[i]n light of the standard advanced by this Circuit, the disparity in the candidates' qualifications . . . that favors plaintiff and [Defendant's] reliance on subjective criteria . . . in its selection of [the selectee] create a genuine issue of material fact whether [Defendant's] proffer is mere pretext for its selection decision."

Similarly, here, Defendant relied on subjective criteria in its selection of Mr. Guerra, namely that Mr. Guerra would work "cooperatively and [take] on assignments as they were given." Ex. 16 (Shroff Dep. at 115:18-116:1). In consideration of such subjective criteria as a basis for Mr. Guerra's selection, and that the disparity in the candidates' qualifications favors Ms. von Muhlenbrock, a genuine issue of material fact exists as to whether Defendant's proffer is mere pretext for its selection decision. The issues in this case have to be decided by the factfinder who can judge each witnesses' credibility along with the substance.

## CONCLUSION

Accordingly, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment.

Dated:  March 7, 2008                                    Respectfully Submitted,

 

_____
Paul S. Thaler (D.C. Bar No. 416614)
Kelly A. Schmidt (D.C. Bar No. 975232)
(not admitted in federal court)
THALER LIEBELER, LLP
1825 Eye Street, N.W.
Suite 400
Washington, DC 20006
*Attorneys for Plaintiff, Gisela von Muhlenbrock*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GISELA VON MUHLENBROCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JAMES H. BILLINGTON, | ) |
| Librarian of Congress, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 05-1921 (PLF)

## INDEX OF PLAINTIFF'S EXHIBITS

| Exhibit | Description |
|---|---|
| Exhibit 1 | Certification (Chile) |
| Exhibit 2 | Johns Hopkins Diploma |
| Exhibit 3 | Gisela von Muhlenbrock Deposition Transcript |
| Exhibit 4 | Gisela von Muhlenbrock Application |
| Exhibit 5 | Letter of Recommendation |
| Exhibit 6 | Ministry of Justice |
| Exhibit 7 | National Democratic Instititute |
| Exhibit 8 | Meritorious Service Commendation |
| Exhibit 9 | Rubens Medina Deposition Transcript |
| Exhibit 10 | EEOC Complaint (1984) |
| Exhibit 11 | 1985 Complaint (*Nguyen et. al v. Boorstin*, Civil Action No. 85-1786) |
| Exhibit 12 | Settlement Agreement (1986) |

| Exhibit | Description |
|---------|-------------|
| Exhibit 13 | Letters of Interest to Ms. Price and Mr. Medina |
| Exhibit 14 | Vacancy Announcement Number 020307 Request |
| Exhibit 15 | Vacancy Announcement Number 020307 |
| Exhibit 16 | Kersi Shroff Deposition Transcript |
| Exhibit 17 | Position Description |
| Exhibit 18 | Rubens Medina Affidavit |
| Exhibit 19 | Kersi Shroff Affidavit |
| Exhibit 20 | Billie Nichols Deposition Transcript |
| Exhibit 21 | May 5, 2003 E-mail to Gisela von Muhlenbrock |
| Exhibit 22 | July 9, 2003 E-mail from Billie Nichols |
| Exhibit 23 | Plaintiff's Interrogatory Responses |
| Exhibit 24 | February 19, 2004 EEOC Complaint |
| Exhibit 25 | List of Qualified Candidates |
| Exhibit 26 | Interview Referral List |
| Exhibit 27 | Applicant Scoring Breakdown |
| Exhibit 28 | KSA Override |
| Exhibit 29 | Library of Congress Merit Selection and Promotion Plan |
| Exhibit 30 | Defendant's Interrogatory Responses |
| Exhibit 31 | Billie Nichols Declaration |
| Exhibit 32 | Tom Kearns Declaration |
| Exhibit 33 | Gustavo Guerra Application |
| Exhibit 34 | Kersi Shroff Interview Notes (G. Guerra) |

| Exhibit | Description |
|---------|-------------|
| Exhibit 35 | Request for Personnel Action |
| Exhibit 36 | November 28, 2007 Letter to J. Brumer |

Dated: March 7, 2008

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GISELA VON MUHLENBROCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-1921 (PLF) |
| v. ) | |
| ) | |
| JAMES H. BILLINGTON, ) | |
| Librarian of Congress, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER

Upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's opposition

thereto, and the entire record herein, it is this _____ day of _____, 2008, hereby,

ORDERED that Defendant's Motion for Summary Judgment be and hereby is

DENIED.


_____
Paul L. Friedman
United States District Judge

Copies to:

Counsel of record via ECF