UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GISELA VON MUHLENBROCK, )
)
    Plaintiff, )
) Civil Action No. 05-1921 (PLF)
    v. )
)
JAMES H. BILLINGTON, )
Librarian of Congress, )
)
    Defendant. )

## PLAINTIFF'S STATEMENT OF DISPUTED FACTS

Plaintiff, Gisela von Muhlenbrock, by and through undersigned counsel, hereby submits this Statement of Disputed Material Facts pursuant to Local Civil Rule 56.1 and Fed. R. Civ. P. 56 in opposition to Defendant's Motion for Summary Judgment. All exhibits and evidence cited herein are attached.

1. In 1982, Plaintiff filed a complaint alleging sexual harassment by Dr. Medina with the Law Library's Labor Relations Office. *See* Ex. 3 (von Muhlenbrock Dep. at 19:25-20:6).

2. In 1984, Plaintiff filed an EEO complaint against Dr. Medina alleging discrimination on the basis of sex. *See* Ex. 10.

3. In Plaintiff's 1985 complaint against the Library of Congress before the United States District Court for the District of Columbia, Ms. von Muhlenbrock alleged that her then supervisor, Dr. Medina, had discriminated against her on the basis of sex and engaged in sexual harassment. *See* Ex. 11.

4. Dr. Medina testified as follows:

    Q. Did you make remarks in the presence of Gisela von Muhlenbrock about her physical

appearance?
*A. I don't recall anything specific.*

Ex. 9 (Medina Dep. at 35:18-19).

5. A co-plaintiff in this action, Phuong Khanh Thi Nguyen, alleged that her then supervisor, and Chief of the Far Eastern Division of the Law Library, Dr. Tao-Tai Hsia, engaged in such discrimination and harassment. *Id.*

6. In January 1991, Plaintiff contacted Dr. Medina to request an application for a position at the Law Library. *Id.* at 28:24-29:5.

7. Dr. Medina informed Ms. von Muhlenbrock that the position had been filled, and stated that he would not send Ms. von Muhlenbrock an application for said position. *Id.* at 29:21-25, 30:7-13.

8. Ms. von Muhlenbrock also sent letters to Ms. Katty Price and Dr. Medina on February 22, 1991, expressing her interest in returning to work in the Law Library and requesting information concerning two vacant positions in the Hispanic Law Division. *Id.* at 29:10-20, 30:7-15, 30:22-23; Ex. 13.

9. Ms. von Muhlenbrock did not receive a response to her letters. *See* Ex. 3 (von Muhlenbrock Dep. at 30:20-21).

10. Accordingly, Ms. von Muhlenbrock followed-up with a letter to the Librarian of Congress. *Id.* at 29:24-31:10.

11. Nonetheless, Dr. Medina testified that he did not recall any such letters or phone calls. *See* Ex. 9 (Medina Dep. at 44:13-45:20, 49:6-14).

12. Dr. Medina testified that he didn't recall having *any* discussions about the Position. *See* Ex. 9 (Medina Dep. at 64:17-21, 67:17-68:6).

13. Nonetheless, Mr. Kersi Shroff – the Selecting Official for the Position – testified that he

had *two or three discussions* with Dr. Medina (among others) regarding the Position. *See* Ex. 16 (Shroff Dep. at 71:21-75:3).

14. Dr. Medina has also asserted that he did not participate in developing the position description. *See* Ex. 9 (Medina Dep. at 72:16-73:5); Ex. 17; *see also* Ex. 18.

15. At his deposition, Dr. Medina denied any involvement in the EEOC investigation into this matter, but admits his signature is on his Affidavit. *See* Ex. 9 (Medina Dep. at 94:10-96:17).

16. However, Mr. Shroff has asserted that Dr. Medina did provide input in formulating the position, and that he approved the position description. *See* Ex. 16 (Shroff Dep. at 71:21-75:3); Ex. 19.

17. On May 5, 2003, Ms. von Muhlenbrock was informed that she had not been selected for the Position. *See* Ex. 21.

18. On July 9, 2003, Ms. von Muhlenbrock was told that she had not been selected for the Position because "[her] score was 96 and the cut-off score for referral for interview was 97." Ex. 22.

19. On July 17, 2003 Plaintiff filed an informal complaint of discrimination with the Library's Equal Employment Opportunity Complaints Office. *See* Ex. 23 ¶ 20.

20. Mr. Shroff has known Ms. von Muhlenbrock since the early 1980s when they were colleagues at the Law Library. *Id.* at 28:16-29:1.

21. Mr. Shroff was aware that Ms. von Muhlenbrock had filed a sexual discrimination complaint against the Library of Congress. *Id.* at 34:20-35:14.

22. Mr. Shroff's boss is Dr. Medina. *Id.* at 19:6-16.

23. A co-plaintiff in the 1985 Lawsuit alleged that Dr. Hsia, Chief of the Eastern Law

Division at the time the Position was being filled, had discriminated against her. *Id.* at 42:6-15, 57:14-58:4; Ex. 11.

24. Dr. Hsia – as chief of the division that was not hiring – selected Ms. Levush to be a panel member. *See* Ex. 16 (Shroff Dep. at 57:14-58:4).

25. Mr. Shroff testified that "generally . . . we wanted to see the top five percent of the candidates . . .". *Id.* at 90:18-20.

26. The top five percent of candidates for this Position included those with scores of 96 and higher, such as Ms. von Muhlenbrock who was among the list of qualified candidates for the Position. *See* Ex. 25.

27. This attachment, forwarded to Mr. Shroff also incorrectly states the number of applicants who scored a 96, the same as Ms. von Muhlenbrock. *See* Ex. 27; *compare* Ex. 25.

28. Additionally, the KSA responses of an applicant with the exact same KSA responses as Ms. von Muhlenbrock were apparently overridden. *See* Ex. 4; *compare* Ex. 28.

29. None of Defendant's witnesses could provide an explanation for said overriding. *See* Ex. 9 (Medina Dep. at 62:7-9); Ex. 16 (Shroff Dep. at 148:11-21); Ex. 20 (Nichols Dep. at 109:5-110:12).

30. However, the selecting panel did not select the top 5% of candidates to interview for the Position. *See* Ex. 26.

31. There is ample conflicting evidence regarding how the selecting official or panel determined which applicants to interview for the Position.

32. The testimony of Mr. Shroff and Ms. Billie Nichols (Human Resources Specialist) – even internally – is contradictory in their assertions that the panel, or Mr. Shroff, decided to interview the top ten applicants, or rather, that it was a certain score or percentage point

that was the alleged deciding factor. *See* Ex. 20 (Nichols Dep. at 59:16-60:2, 61:5-7) (top ten); *see also* Ex. 16 (Shroff Dep. at 82:10-12) (top ten); *compare Id.* at 85:13-86:2 (top 3%); *Id.* at 85:13-86:2 (score of 98); *Id.* at 86:17-20 (score of 97); Ex. 20 (Nichols Dep. at 59:16-60:2) (score of 97); *see also* Ex. 30.

33. The Library of Congress Merit Selection and Promotion Plan (the "Plan") requires that "[t]he automated system generate[] a list of the top seven applicants plus tied scores" for interview referral. Ex. 29 Art. VI.D.1.d.

34. Ms. Nichols testified that the Selecting Official indicated that he wanted to interview the top ten applicants because the Plan's requirement that the top seven applicants plus ties be interviewed resulted in ten applicants. *See* Ex. 20 (Nichols Dep. at 61:5-7)

35. This is incorrect. *See* Ex. 25.

36. Applying the Plan's requirements, the top seven applicants plus ties would not have even resulted in an interview of the top ten applicants. *Id.*

37. Ms. Nichols testified as follows:

    "[The Selecting Official, Mr. Shroff] knew that the tied scores had to be referred as well. That's why he indicated that [he] wanted to interview the top ten."
    *Id.* at 59:16-61:7.

38. However, Mr. Shroff was *not even aware* that the Plan required he interview the top seven applicants *plus* ties, as he testified that the Plan required he interview the top seven applicants *excluding* ties. *See* Ex. 16 (Shroff Dep. at 82:15-84:2); *compare* Ex. 20 (Nichols Dep. at 67:10-68:14).

39. Among Mr. Shroff's responsibilities, as Selecting Official, was to "[apply] the principles and requirements of [the] Plan . . .". Ex. 29, Art. IV.

40. Mr. Shroff, alternatively, testified that the panel *decided* which applicants to interview, rather than that it did so as a requirement. *See* Ex. 16 (Shroff Dep. at 81:10-83:4).

41. Furthermore, the Defendant has lost or destroyed the initial communication, including an attachment, between Mr. Shroff and Ms. Nichols regarding the basis for selecting applicants to interview for the Position. *See* Ex. 20 (Nichols Dep. at 59:16-60:2, 74:18-76:6); Ex. 31 ¶ 3.

42. Tellingly, Mr. Shroff testified that he did not recall any such communication or attachment. *See* Ex. 16 (Shroff Dep. at 96:12-97:14).

43. The Defendant failed to follow its policies and procedures in filling the Position.

44. Specifically, the Plan requires, in part, that (1)"the automated system [generate] a list of the top seven applicants plus tied scores . . .", (2) "the list of applicants referred . . . be in alphabetical order with no reference to the automated system results . . .", (3) "[a]t the conclusion of the selection process, a report will be compiled that will include documentation developed and maintained at each step of the Library's merit selection process . . .", and (4) "if a grievance or other complaint or dispute is filed regarding the action, [the merit selection] file shall be maintained until the conclusion of the case, including any appeals." Ex. 29, Arts. VI. D.1.d & VIII.A.

45. The Defendant is also remarkably unaware of its own policies and procedures.

46. Mr. Shroff did not know these were requirements under the Plan, despite it being his responsibility to ensure that the Plan was followed. *See* Ex. 16 (Shroff Dep. at 102:4-107:9); Ex. 29, Art. IV.

47. Dr. Medina testified that he had no recollection of *ever* reading the policies, and did not know what was in them. *See* Ex. 9 (Medina Dep. at 88:7-91:12).

48. The Defendant failed to comply with any of these requirements.

49. The "automated" system did not generate a list of the top seven applicants plus tied scores. *See* Ex. 20 (Nichols Dep. at 67:10-68:4).

50. The interview referral list forwarded to Mr. Shroff by Ms. Nichols ranked the interviewees by score, as opposed to alphabetical order, as required. *See* Ex. 26.

51. The Defendant did not compile a report at the conclusion of the selection process. *See* Ex. 20 (Nichols Dep. at 89:10-17); Ex. 16 (Shroff Dep. at 106:6-107:9 ).

52. Additionally, the Defendant failed to maintain its merit selection files until the conclusion of this dispute. Ex. 31 ¶ 3.

53. In August or September 2007 – and, in any event, clearly prior to the conclusion of this action – Ms. Nichols discovered that documents regarding the Position's selection were missing from the merit files. *See* Ex. 20 (Nichols Dep. at 74:18-78:10); Ex. 31 ¶ 3.

54. Defendant also destroyed or failed to maintain electronic documents despite Ms. von Muhlenbrock's informal complaint of discrimination on July 17, 2003; formal complaint of discrimination on February 19, 2004; and the commencement of this action on September 19, 2005. *See* Ex. 32; Ex. 23; Ex. 24; *see also* Def.'s Mem., p. 3.

55. According to Defendant, because "in 2003, it was the Library's policy to maintain back-up tapes for one year. . . the *earliest* data the Library has on the back-up tapes . . used by Ms. Nichols and Mr. Shroff is *December 27, 2004*." Ex. 32 (emphasis added).

56. Furthermore, Dr. Medina, the Law Librarian, stated that, although he was aware of a request for documentation, he had never searched his documents or reviewed emails that might relate to the substance of the lawsuit. *See* Ex. 9 (Medina Dep. at 13:14-19).

57. He has not handled his e-mails any differently since the lawsuit commenced, and is not

aware of any special treatment of documents once a lawsuit has commenced. *Id.* at 14:9-21.

58. Dr. Medina has never received any instruction to take any action with respect to documentation when such an action is filed. *Id.* at 87:21-88:6.

59. Mr. Shroff selected and recommended Mr. Gustavo Guerra for the Position. *See* Ex. 9 (Medina Dep. at 76:21-77:12).

60. According to his application for the Position, Mr. Guerra's education and experience can be described as follows: Mr. Guerra received the equivalent of his J.D. in Mexico in 1995; he worked as a Law Clerk in Mexico from 1993 to 2001; he served as a legal intern with the Federal Communications Commission; received a Masters in International Legal Studies from the Georgetown University Law Center; and is proficient in English and Spanish. *See* Ex. 33.

61. Mr. Shroff testified that he selected and recommended Mr. Guerra for the Position because, in part, of "his Mexican law qualification . . .". Ex. 16 (Shroff Dep. at 115:12-16) (stating that Mr. Guerra represented that he was an "[a]ttorney, licensed in Mexico 1995"); *Id.* at 120:9 *see also* Ex. 34, p.10.

62. However, there is no evidence in the record that Mr. Guerra is licensed to practice law in Mexico.

63. Pursuant to the Vacancy Announcement, "applicants certified to practice law" were to provide "evidence of certification . . . at the interview." Ex. 15.

64. There is no evidence in the record that Mr. Guerra ever provided, or that the Defendant ever requested, such evidence of certification.

65. Plaintiff repeatedly requested such evidence in the discovery phase of this litigation. *See*

Ex. 36.

66. The Position also required a "knowledge of and competency in the laws of Spanish/Portuguese language jurisdictions." Ex. 15.

67. However, Mr. Shroff's interview notes reflect that Mr. Guerra had *"[n]o experience with Portuguese laws . . ."*. Ex. 16 (Shroff Dep. at 124:4-6) (emphasis added); *see* Ex. 34, p.18.

68. Mr. Shroff also testified that he selected Mr. Guerra, in part, on the basis of his interview because he "would be able . . . to work according to the manner in which we expected the person to work, cooperatively and taking on assignments as they were given." Ex. 16 (Shroff Dep. at 115:18-116:1).

69. On May 1, 2003, Dr. Medina approved the selection and recommendation of Mr. Guerra by Mr. Shroff for the Position. *See* Ex. 9 (Medina Dep. at 76:21-77:12); Ex. 35.

Dated:  March 7, 2008                                Respectfully Submitted,

Paul S. Thaler (D.C. Bar No. 416614)
Kelly A. Schmidt (D.C. Bar No. 975232)
(not admitted in federal court)
THALER LIEBELER, LLP
1825 Eye Street, N.W.
Suite 400
Washington, DC 20006
*Attorneys for Plaintiff, Gisela von Muhlenbrock*