UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GISELA VON MUHLENBROCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1921 (PLF) |
| ) | |
| JAMES H. BILLINGTON, ) | |
| LIBRARIAN OF CONGRESS, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

Defendant James Billington, Librarian of the Library of Congress ("Defendant" or "Library") respectfully submits this reply in support of his motion for summary judgment.

**I.  INTRODUCTION**

The legal standard for the summary disposition of a case is that "[a] party opposing a motion for summary judgment must point to more than just 'a scintilla of evidence' to support [her] position," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Specifically, "there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 249-50. Evidence that is "merely colorable" or "not significantly probative" will not defeat a motion for summary judgment.  Id.  It is this latter type of evidence upon which Plaintiff in this case relies upon heavily in opposing Defendant's motion for summary judgment.

1

Plaintiff, in her opposition memorandum, fails to raise a genuine issue in dispute such that a jury might rule to the contrary. See e.g., Stewart v. Ashcroft, 352 F.3d 422, 428 (D.C. Cir. 2003)(affirming District Court's decision granting summary judgment to defendant in Title VII case where plaintiff/appellant failed to offer sufficient evidence such that a jury could find that the agency's reason for its actions was a pretext for discrimination). Indeed, Plaintiff's opposition memorandum and exhibits attempt to create the appearance of material facts in dispute when in fact there are none. As such, Defendant's motion for summary judgment should be granted and Plaintiff's suit dismissed with prejudice.

## I. ARGUMENT

**A. Plaintiff Has Failed to Establish a *Prima Facie* Case of Retaliation.**

Plaintiff cannot show that there existed any causal connection between her filing a complaint of sex discrimination in 1985 and her 2002 non-selection for a Foreign Law Specialist position in the Law Library of the Library of Congress. In order to establish a *prima facie* case of retaliation, a plaintiff must establish that (1) she engaged in protected activity, (2) she was subsequently subjected to an adverse employment action by the employer, and (3) there existed a causal link between the adverse employment action and the subsequent protected activity. Broderick v. Donaldson, 437 F. 3d 1226, 1231-32 (D.C. Cir. 2006). The third, or causal connection prong of the *prima facie* test can be satisfied by showing that the employer taking the adverse employment action had knowledge of the plaintiff's prior protected activity and that the adverse employment action took place shortly after that activity. Holcomb v. Powell, 433 F. 3d 889, 903 (D.C. Cir. 2006)(quoting Mitchell v. Baldridge, 759 F. 2d 80, 89 (D.C. Cir. 1985)). As

2

noted previously by Defendant in its motion for summary judgment ("Defendant's Motion"), in order to establish temporal proximity sufficient to establish a causal connection, the protected activity and the adverse employment action must be "very close" in time such that no more than a few months have elapsed between the two events.  Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001)(citations omitted); see also, Mayer v. Laborer's Health & Safety Fund of North America, 478 F. 3d 364, 369 (D.C. Cir. 1997)(holding that an 8 or 9 month gap between the protected activity and the alleged discriminatory conduct is too long).  As noted previously, Plaintiff filed her complaint of sex discrimination in 1985 and the parties settled the complaint in 1986.  Defendant's Motion, Ex. 1. Subsequently, in 1989, Plaintiff voluntarily resigned from her Library position.  Defendant's Motion, Plaintiff Depo. at 26:19-20; 27:19-25.

In 2003, Plaintiff applied for the Foreign Law Specialist position at issue in this matter. Defendant's Motion, Plaintiff Depo. at 34:17-20; see also Ex. 4.  Other than Plaintiff's claim that she corresponded with three Library officials (Rubens Medina, Kathy Price and James Billington) in 1991 about positions in the Library, Plaintiff had no other contact with any of the officials involved in her 2003 non-selection. See Plaintiff's Opp. At 4.  Therefore, the 17-year passage of time between settlement of Plaintiff's 1985 complaint and her 2003 non-selection for the Foreign Law Specialist position in the Law Library, suggests "no causality at all" between the two events.  See Breeden, 532 U.S. at 274-75.

Notwithstanding the lack of temporal proximity between Plaintiff's protected activity in 1985 and her 2003 non-selection for the Foreign Law Specialist position, the evidence as a whole does not support an inference of retaliation between the two events.  As noted by Plaintiff,

temporal proximity is not the only means of establishing a causal connection. Plaintiff's Opp. at 13-14 (citing to Medina v. District of Columbia., 517 F. Supp. 272, 288 (D.D.C. 2007)). Evidence of discriminatory or disparate treatment in the time period between the protected activity and the alleged adverse employment action can also be sufficient to show a causal connection. Medina at 288; see also Buggs v. Powell, 293 F. Supp. 135, 149 (D.D.C. 2003). However, Plaintiff posits no evidence whatsoever that the Library selecting official responsible for Plaintiff's non-selection, Kersi Schroff, was in any way antagonistic towards Plaintiff or treated Plaintiff in a discriminatory or disparate manner at any time following her protected activity, nor especially during the selection process for the Foreign Law Specialist position.[1] Indeed, although Mr. Schroff admits that—as a colleague of the Plaintiff in the Law Library in the 1980's--he was generally aware of Plaintiff's 1985 sex discrimination complaint, there is not a scintilla of evidence that he was in any way aware that, nearly 18 years later, Plaintiff would be applying for a position for which he (Mr. Shroff) would be the selecting official. Ex. 16, Shroff Depo. at 35: 8-11. This is because, consistent with Library regulations, a Staffing Specialist, Billie Nichols, from the Library's Human Resources Services ("HRS") presented Mr. Shroff with the initial scores (but not the names) of applicants for the Foreign Legal Specialist position. Defendant's Motion, Ex. 5; see also Ex. 14, Shroff Depo. at 81:10-21; 82:1-9; Ex. 15, Nichols Depo. at 41:6-20. The scores were generated by the Library's AVUE system based on the individual applicants' responses to the Knowledge, Skills, and Abilities that were part of the

---

[1] In fact the record reflects that the opposite is true: Mr. Shroff was asked whether or not he had an opinion about the allegations made by Plaintiff in her 1985 complaint of sex discrimination. Mr. Shroff stated that "[He] did not know the details of the complaint. [He] respected the Plaintiff. As far as [he knew], she was a good worker. In that sense [he] had an opinion." Ex. 16, Shroff Depo. at 35: 15-20.

Vacancy Announcement for the position; based on the initial scores presented to him, Mr. Shroff decided that he and the three-person interview panel would interview all the applicants whose initial AVUE score was a 97 or above. See Defendant's Motion, Ex. 14 Shroff Depo. at 82:2-14; 85:13-21; 86:1-2; see also Ex. 5. However, because Plaintiff's initial score was a 96, her name was not referred to the interview panel for an interview and Mr. Shroff therefore, was never aware (until after Plaintiff's complaint was filed with the Library's EEO complaints office) that Plaintiff had even applied for the Foreign Legal Specialist position. See Defendant's Motion, Ex. 6; Ex. 7; Ex. 12 ¶ 5. An applicant whose initial score was above the 97 cut-off (Gustavo Guerra) was selected for the position and because Plaintiff had not scored at or above the 97 cut-off, she was not interviewed for the position and therefore, she was not selected for the Foreign Legal Specialist position. Id. These facts do not in any way infer a discriminatory motive on the part of any Library official to retaliate against Plaintiff for any past protected activity.

      Plaintiff posits that there is "conflicting evidence" as to the method for determining who would be interviewed for the position such that when "considered as whole in the light most favorable to Plaintiff" raises an inference of discriminatory motive. Plaintiff's Opp. at 15. She cites varying testimony between the HRS staffing specialist and Mr. Shroff as to how it was decided which applicants would be interviewed for the position which would lead a "reasonable factfinder" to infer that retaliation against the Plaintiff motivated this decision-making. Ibid at 15-16. Defendant posits however, that it is Plaintiff who has confused the evidence regarding how Mr. Shroff concluded that he and the interview panel would only interview those applicants who had scored at least a 97. Both Mr. Schroff and the HRS staffing specialist were consistent

in their testimony that the Library's merit selection rules mandated that at least the top seven applicants were to be interviewed for any vacancy.[2]  See Defendant's Motion, Ex. 14, Shroff Depo. At 82: 15-21; see also Ex. 17, Nichols Depo. at 47:2-11.  Consistent as well with the Library's merit selection rules, Mr. Shroff decided to expand the pool of interviewees and settled on the top ten persons because the score of 97 presented a "good break" in the scores.  See Defendant's Motion, Ex. 14, Shroff Depo. at 88:11-21; 89:1-20.  Absolutely nothing in the testimony of either Mr. Shroff or Ms. Nichols, nor any other evidence, indicates that they in any way colluded to ensure that Plaintiff was not referred for an interview.  Indeed, as noted above, while Mr. Shroff was generally aware of Plaintiff's 1985 complaint, Plaintiff presents no evidence that he was in any way involved in that earlier complaint and more importantly, there is no evidence that he had any idea that Plaintiff had applied for the Foreign Legal Specialist position.  Moreover, the Staffing Specialist, Ms. Nichols, did not start her employment at the Library until 2001, twelve years after Plaintiff voluntarily resigned from the Library in 1989, and there is no evidence in the record that Ms. Nichols was aware of Plaintiff's prior 1985 Complaint until Ms. Nichols was notified by the EEO Investigator in 2004 regarding Plaintiff's retaliation complaint on her non-selection.  See Defendant's Motion, Ex. 15 Nichols Depo. At 38: 1-7; see also Ex. 17, Nichols Depo. at. 22:13-18.

      Instead, Plaintiff advances a veritable cornucopia of red herrings, supposition, and conjecture to propose that the "conflicting evidence" as to how applicants were referred for

---

2 To the extent that there was any "confusion" on the part of Mr. Shroff, it should be attributed to the benign fact that the Foreign Law Specialist was the first position he had ever filled at the Library of Congress.  Defendant's Motion, Ex. 14, Shroff Depo. at 83: 5-9.

interview was suspect as was the Library's misplacing or failing to maintain documents in the vacancy merit file and Library officials' unfamiliarity with the agency's hiring "policies and procedures." Plaintiff's Opp. at 6-9. What Plaintiff fails to account for however, is any evidence linking either Mr. Shroff or Ms. Nichols to knowledge of Plaintiff's status as an applicant for the Foreign Law Specialist position, or—even assuming that they knew that Plaintiff was an applicant for the Foreign Law Specialist position—that they harbored some ill motive towards Plaintiff because of her prior protected activity in the 1980's. Indeed, there is no evidence of any such linkage in this matter and this is fatal to Plaintiff's *prima facie* case of retaliation. In Medina, the District Court found that the plaintiff established an inference of retaliation where there was evidence that the two agency officials responsible for acting on the plaintiff's request for a transfer were aware of and discussed his past protected activity around the time that plaintiff's request for a transfer was pending; one of these agency officials had received a resume from plaintiff and discussed with plaintiff the latter's interest in a transfer; the official had failed to pass on the resume for consideration to the second agency official responsible for selecting applicants for transfer; and there was a history of discrimination against Hispanics (like the plaintiff) in the same agency. Medina, 517 F. Supp. 272, 289-90. As the District Court found, there was sufficient evidence based on the above factors to at least raise an inference of retaliation to meet the plaintiff's minimal *prima facie* burden to show causation. Ibid at 290. But such evidence is lacking here.

In Buggs, the District Court found that the plaintiff had established an inference of retaliatory discrimination where the alleged agency discriminating officials had previously

7

approved the selection of someone other than the plaintiff for a position; the official was one of the targets of plaintiff's subsequent complaint of discrimination; and while the agency's EEO investigation was ongoing and the official was the subject of the investigation (and thus was aware that the plaintiff had filed a complaint alleging that the official had discriminated against him) the plaintiff applied for another position and was not selected for the position by the same agency official. Buggs, 293 F. Supp. 135, 149-50. Tellingly, none of the same type of facts that were decisive in Buggs and Medina are present in Plaintiff's case. *To wit*: she cannot show that Mr. Shroff was aware or knew that she (Plaintiff) was interested in the Foreign Law Specialist position or that she had even applied for the position; she cannot show that Mr. Shroff or anyone else related to the hiring decision discussed Plaintiff's previous 1985 complaint of discrimination in or around the time of the hiring process; and she cannot show that Mr. Shroff or Ms. Nichols were involved in or were the target of Plaintiff's previous discrimination complaint or that the investigation of Plaintiff's prior complaint was ongoing at any time during the hiring process for the Foreign Law Specialist position.

  Hence, the evidence proffered by the Plaintiff as a whole does not, even when viewed in the light most favorable to her, raise or create an inference of retaliation. Not only was Plaintiff's prior protected activity (in 1985-86) and her subsequent non-selection (in 2003) lacking in temporal proximity but there are no facts which would indicate in any way that the Library's selecting official, Mr. Shroff (or any other relevant Library employee) knew that Plaintiff was applying for the Foreign Legal Specialist position. Moreover, even assuming *arguendo,* that Mr. Shroff (or any other relevant Library employee) knew that Plaintiff was

8

applying for the position, there is no evidence that he manipulated the hiring process or ensured that Plaintiff was not referred to an interview <u>because</u> of her previous complaint.  In short, nothing put forth by Plaintiff points to any "genuine issues of material fact" that would defeat Defendant's motion for summary judgment nor are any of the conclusory allegations made by Plaintiff sufficiently meritorious so as to warrant a trial."  <u>See</u> <u>Greene v. Dalton</u>, 164 F. 3d 671, 675 (D.C. Cir. 1999)("Accepting [some] conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a…trial.").

### B. The Library Had Legitimate, Non-Discriminatory Reasons For Its Selection Decision.

Plaintiff cannot show that the Library's reasons for not interviewing her for the Foreign Law Specialist, and therefore, not selecting her for the position, was premised on an illegitimate, discriminatory reason.  As noted previously, there are legitimate, non-discriminatory reasons for why Plaintiff was not selected for the Foreign Law Specialist position.  First and foremost, as noted above, Defendant sought to limit the number of interviews to approximately ten and Plaintiff did not score high enough in order to make the cut-off score for an interview.  Having not secured an interview because of her score, Plaintiff was not thereafter considered for selection, since selection to the position presupposed <u>interviewing</u> for the position.  In contrast, the selectee—Gustavo Guerra—scored high enough (he scored a 99) to be referred to an interview, was interviewed, and then was selected to the position by Mr. Shroff.[3]  As enunciated

---

3  Moreover, despite Plaintiff's contention that Defendant failed to identify the reasons for its selection determination (Plaintiff's Opp. at 18), Defendant's Motion clearly demonstrated that there is ample evidence in the record regarding the criteria Defendant used to select Mr. Guerra.  As previously stated in Defendant's motion, given

9

in Defendant's foregoing analysis as to the lack of any evidence of causation between the Plaintiff's previous complaint of discrimination and her subsequent non-selection for the position of Foreign Legal Specialist, Plaintiff cannot show that the Library's decision in not selecting her and instead selecting Mr. Guerra, was in any way illegitimate or discriminatory. Plaintiff suggests that the issue as to why Plaintiff was not referred for an interview remains in dispute and that there is sufficient evidence "to suggest that [the Library's]…purported explanation 'is in fact a cover-up for a…discriminatory decision.'" Plaintiff's Opp. at 18-19 (quoting McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 805 (1973)). Again, such an outlandish theory would have to presuppose that Mr. Shroff (or any other Library employee involved in the hiring process for the Foreign Law Specialist position) was aware that Plaintiff had applied for the position and that cognizant of this fact, he/they conspired to ensure that Plaintiff was not referred to an interview in order to ensure her non-selection. There is simply no evidence of this nor can Plaintiff point to any such evidence.

### III. CONCLUSION

Accordingly, Defendant is entitled to summary judgment as a matter of law and Plaintiff's complaint should be dismissed.

---

the Knowledge, Skills and Abilities (KSAs) required for the position, Mr. Guerra was an appealing candidate for many reasons, including: his Mexican law qualifications, his experience with respect to the country of Mexico, his LLM degree from Georgetown, his knowledge of the Global Legal Information Network (GLIN) database, and his demonstrated research ability and preparation of final court opinions as well as legal memoranda in all aspects of Mexican law and judicial administration. Defendant's Motion at 7-9, see also Ex. 8 (Guerra's application); Ex. 9 ("Justification"); and Ex. 14, Shroff Depo. at 115:6-16; 120: 8-21; 121:1-16.

April 9, 2008                               Respectfully submitted,


                                            /s/
                                            _____
                                            JEFFREY A. TAYLOR, D.C. BAR #498610
                                            United States Attorney


                                            /s/
                                            _____
                                            RUDOLPH CONTRERAS, D.C. BAR #434122
                                            Assistant United States Attorney


                                            /s/
                                            _____
                                            JULIA K. DOUDS
                                            Special Assistant United States Attorney
                                            555 Fourth Street, N.W.
                                            Washington, D.C. 20530
                                            (202) 707-7198
                                            (202) 514-8780 (facsimile)

Agency Counsel:

Evelio Rubiella
Associate General Counsel
Library of Congress