UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GISELA VON MUHLENBROCK,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES H. BILLINGTON,<br>Librarian of Congress,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No. 05-1921 (PLF)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S MOTION FOR
ADVERSE INFERENCES AND MONETARY SANCTIONS**

Plaintiff, Gisela von Muhlenbrock, by and through undersigned counsel, hereby submits her Memorandum of Points and Authorities in support of her Motion for Adverse Inferences and Monetary Sanctions.

## I. INTRODUCTION

Ms. von Muhlenbrock is entitled to adverse inferences and monetary sanctions because Defendant recklessly (or, at the very least, negligently) lost or destroyed relevant evidence crucial to Plaintiff's claims that it had an obligation to preserve. Defendant was on notice of the possibility of litigation in this matter by July 17, 2003, yet it began destroying back-up tapes containing evidence relevant to this litigation over six months later. The relevant evidence, perhaps not surprisingly, has also been lost or destroyed from the author(s) and recipient(s) e-mail accounts, and are nowhere to be found in hard copy despite the Library's own requirement that such evidence be maintained until the conclusion of any dispute in this matter. The evidence which we know has been lost is the initial exchange of communication – generated on or around

the exact same day that Ms. von Muhlenbrock applied for the position at issue – between two key employees regarding the basis for selecting applicants to interview for the Position, and an attachment containing (at the very least) applicant scoring information. Common sense tells us that if this evidence were favorable to Plaintiff, they would have taken pains to maintain it. Rather, here, Defendant lost or destroyed the evidence from all possible sources. It is therefore logical to infer that the evidence at issue was in fact unfavorable to Defendant and, accordingly, an adverse inference instruction and monetary sanctions are appropriate.

## II. STATEMENT OF FACTS

Plaintiff filed her Complaint in this action on September 29, 2005, alleging that Defendant retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Plaintiff was a Foreign Law Specialist in the Hispanic Law Division of the Law Library of the Library of Congress (the "Law Library") from 1981 to 1989, at which time she resigned. *See* Ex. 1 (von Muhlenbrock Dep. at 26:23-27:23). While an employee of the Law Library, Plaintiff filed a complaint alleging sexual harassment by Dr. Rubens Medina[1] with the Law Library's Labor Relations Office in 1982; filed an EEO complaint against Dr. Medina alleging discrimination on the basis of sex in 1984; and, in 1985, she and two colleagues filed a complaint against the Library of Congress in the United States District Court for the District of Columbia alleging discrimination on the basis of sex and sexual harassment, which settled the following year. *See* Ex. 1 (von Muhlenbrock Dep. at 11:17-25; 14:3-5, 20-22, 19:25-20:6); *see also* Exs. 2-4.

---

[1] Plaintiff's supervisor during the time she was employed at the Law Library was Dr. Medina, then Chief of the Hispanic Law Division and current Law Librarian of the Library of Congress. *See* Ex. 1 (von Muhlenbrock Dep. at 14:14-16; 17:9-17, 20:7-11); Ex. 5 (Medina Dep. at 20:7-15; 48:21-49:2).

### *A. The Position*

A panel of three subject matter experts was responsible for filling a Foreign Law Specialist position in the Western Law Division[2] of the Law Library (the "Position") at Vacancy Announcement Number 020307 (the "Vacancy Announcement"). *See* Ex. 6 (Shroff Dep. at 57:8-13). The members of the panel were: Mr. Kersi Shroff; Dr. Tao-tai Hsia; and Ms. Ruth Levush. *Id.* at 57:8-58:4. Mr. Shroff, Chief of the Western Law Division, was the Selecting Official for the Position. *Id.* at 56:7-20, 62:8. Mr. Shroff, whose boss is Dr. Medina, has known Ms. von Muhlenbrock since the early 1980s when they were colleagues at the Law Library, and he was aware that Ms. von Muhlenbrock had filed a sexual discrimination complaint against the Library of Congress. *Id.* at 19:6-16, 28:16-29:1, 34:20-35:14. A co-plaintiff in the 1985 Lawsuit alleged that Dr. Hsia, Chief of the Eastern Law Division at the time the Position was being filled, had discriminated against her. *Id.* at 42:6-15, 57:14-58:4; Ex. 11. Dr. Hsia – as chief of the division that was not hiring – selected Ms. Levush to be a panel member. *See* Ex. 6 (Shroff Dep. at 57:14-58:4). The Human Resources Specialist (Recruitment and Placement) assigned to process the Position was Ms. Billie Nichols. Ex. 7 ¶¶1-2.

On November 21, 2002, Dr. Medina approved a Vacancy Announcement Request and proposal for posting of the Position. *See* Ex. 8; Ex. 9; Ex. 5 (Medina Dep. at 63:18-64:12). On January 23, 2003, Plaintiff applied for the Position. *See* Ex. 10. On January 30, 2003, Ms. von Muhlenbrock's name and score[3] were included among a list of qualified applicants for the Position. Ex. 12. Despite Mr. Shroff's testimony that "generally . . . we wanted to see the top

---

[2] The Hispanic Law Division merged into the Western Law Division, which was created in the early 1990s. *See* Ex. 6 (Shroff Dep. at 42:3-43:15).

[3] Applicants for the Position were assigned scores based on their responses to the Position's knowledge, skills, and abilities (the "KSAs"), which were "designed to measure [the applicant's] experience and training in relation to the requirements of [the Position]." Ex. 10; *see also* Ex. 11 (Nichols Dep. at 120:3-11).

five percent of the candidates", which would have included Ms. von Muhlenbrock, Mr. Shroff departed from this practice and did not select Ms. von Muhlenbrock to interview for the Position. Ex. 13. As more fully set forth in Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment, there is ample conflicting evidence in the record regarding the basis for this departure. *See* Pl. Opp., pp. 6-8. On May 1, 2003, Dr. Medina approved the selection and recommendation of Mr. Gustavo Guerra for the Position. *See* Ex. 5 (Medina Dep. at 76:21-77:12); Ex. 14. On May 5, 2003, Ms. von Muhlenbrock was informed that she had not been selected for the Position. *See* Ex. 15.

### B. Notice of Duty to Preserve Evidence

On July 17, 2003, Plaintiff filed an informal complaint of discrimination with the Library's Equal Employment Opportunity ("EEO") Complaints Office alleging that Defendant retaliated against her in filling the Position. *See* Ex. 16 (confirming by letter that Plaintiff's attorney called Ms. Thelma Brown, the Library's Acting EEO Counselor, on July 17, 2003 regarding Plaintiff's "discrimination charge for failure to select [her] for the position of Foreign Law Specialist 020307."); Ex. 17. By January 9, 2004, Mr. Bill Ayers, in the Library's HR Office of Workforce Acquisitions, was also aware that Ms. von Muhlenbrock had filed such a complaint. Ex. 18 ("As I stated in our conversation this morning I am the EEO Counselor assigned to investigate the informal complaint filed by Ms. von Muhlenbrock" who "alleges that she was discriminated against . . . when she was not selected for the [Position]."). Ms. Danee Gaines, the EEO Counselor investigating Ms. von Muhlenbrock's complaint, continued to correspond with Mr. Ayers' office through early February 2004. Ex. 19; Ex. 20. According to Mr. Shroff, he also met with an investigator regarding the complaint in early 2004. Ex. 21. On February 19, 2004, Ms. von Muhlenbrock filed a formal EEO complaint for retaliation. Ex. 22.

### *C. Lost or Destroyed Evidence*

The Library's policy in 2003 was to destroy back-up tapes of its e-mail servers after one year. Ex. 23. Accordingly, the Library began destroying the back-up tapes at issue in November 2003 (one year after Dr. Medina approved posting of the Position) through May 2004 (one year after Dr. Medina approved the hiring of Mr. Guerra for the Position). "[T]he *earliest* data the Library has on the back-up tapes . . . used by Ms. Nichols and Mr. Shroff is December 27, 2004", which is over six months *after* Dr. Medina had already approved hiring for the Position. Ex. 23 (emphasis added).

Additionally, neither Ms. Nichols nor Mr. Shroff maintained on their e-mail servers any electronic documents from the crucial time period during which the Position was approved for posting by Dr. Medina, Ms. von Muhlenbrock applied for the Position, it was determined how interviewees would be selected for the Position, and interviewees were selected for the Position. See Exs. 24 ¶5 ("The earliest piece of data I have on my e-mail account is from March 17, 2003.") and 7 ¶6 ("The earliest piece of data I have on my e-mail account is from May 2003.").

The Defendant also lost or destroyed relevant hard copies of documentary evidence. The Library of Congress Merit Selection and Promotion Plan (the "Plan") requires that "if a grievance or other complaint or dispute is filed regarding the action, [the merit selection] file shall be maintained until the conclusion of the case, including any appeals." Ex. 25, Art. VIII.A. Nonetheless, the Defendant failed to maintain its merit selection files until the conclusion of this dispute. Ex. 7 ¶ 3. As Ms. Nichols testified, documents were missing from the Position's merit selection file. *See* Ex. 11 (Nichols Dep. at 74:18-78:10); Ex. 7 ¶ 3.

Dr. Medina, the Law Librarian, also testified that, although he was aware of a request for documentation in this action, he had never searched his documents nor reviewed e-mails that

might relate to the substance of this lawsuit. *See* Ex. 5 (Medina Dep. at 13:14-19). He has not handled his e-mails any differently since the lawsuit commenced, is not aware of any special treatment of documents once a lawsuit has commenced, and has never received any instruction to take any action with respect to documentation when such an action is filed. *Id.* at 14:9-21, 87:21-88:6.

As a result of Defendant's destruction of, or failure to maintain, electronic and hard copy documents, Defendant has lost or destroyed at least the following evidence:

1. the initial communication between two key Library employees on the subject of selecting applicants to interview for the Position, namely an e-mail from Ms. Nichols to Mr. Shroff generated on or around January 23, 2003, the date on which Ms. von Muhlenbrock applied for the Position;[4]

2. an attachment to this initial communication, also generated on or around January 23, 2003, the date on which Ms. von Muhlenbrock applied for the Position, indicating (at least) applicant scoring information;

3. an e-mail response from Mr. Shroff to Ms. Nichols, purportedly informing her that he wanted to interview the top ten applicants; and

4. a Level 2AA Review Form showing diversity of the pool of candidates prepared after the closing of the Vacancy Announcement on January 27, 2003.

*See* Exs. 9, 11 (Nichols Dep. at 59:16-60:2, 74:18-76:6) and 7 ¶ 3;

### III. APPLICABLE LAW

"A district court may order sanctions . . . for misconduct . . . pursuant to the court's inherent power to 'protect its integrity and prevent abuses of the judicial process.'" *Webb v.*

---

[4] Tellingly, Mr. Shroff testified that he did not recall any such communication or attachment. *See* Ex. 6 (Shroff Dep. at 96:12-97:14).

*District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (citing *Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). A court's inherent powers to sanction include monetary sanctions, such as an award of costs and attorney's fees. *Chambers*, 501 U.S. at 45 ("[T]he 'less severe sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power . . . ."); *see also United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 21, 26 (D.D.C. 2004) (requiring Defendants to pay a monetary sanction of $2,750,000); *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 291 (E.D. Va. 2001) ("Trigon is entitled to recover attorneys fees and costs incurred as a consequence of the spoliation of evidence."). A district court also has the inherent power to order an adverse inference instruction against a party for spoliation of evidence. *See Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995) ("Other inherent power sanctions available to courts include . . . drawing adverse evidentiary inferences."); *see also Mazloum v. D.C. Metro. Police Dep't*, 530 F. Supp. 2d 282, 289-93 (D.D.C. 2008) (concluding that an adverse inference instruction for spoliation was available to plaintiff as a matter of law).

An adverse inference instruction and monetary sanctions based upon spoliation of evidence are available where: (1) "the party having control over the evidence had an obligation to preserve it when it was destroyed or altered"; (2) the party "destroyed the evidence (or allowed it to be destroyed) with a sufficiently 'culpable mind'"; and (3) the evidence destroyed or altered was relevant to the claims or defenses of the party seeking discovery of said evidence. *Mazloum*, 530 F. Supp. 2d at 291-93; *see also Rice v. United States*, 917 F. Supp. 17, 20 (D.D.C. 1996). "[T]he adverse inference doctrine embraces negligent (in addition to deliberate) destruction of evidence . . . .". *Mazloum*, 530 F. Supp. 2d at 292. However, "'upon a finding of

gross indifference to or reckless disregard for the relevance of the evidence to a possible claim, the trial court *must* submit the issue of lost evidence to the trier of fact with corresponding instructions allowing an adverse inference.'" *Rice*, 917 F. Supp. at 20 (citing *Battocchi v. Washington Hosp. Ctr.*, 581 A.2d 759, 766-67 (D.C. 1990)).

## IV. ARGUMENT

### A. DEFENDANT HAD CONTROL[5] OVER THE EVIDENCE AND AN OBLIGATION TO PRESERVE IT WHEN IT WAS DESTROYED.

An obligation to preserve evidence can arise "'when a party should have known that the evidence might be relevant to future litigation.'" *Mazloum*, 530 F. Supp. 2d at 291 (citing *Kraus v. GMC*, 2007 U.S. Dist. LEXIS 79651 at *3 (S.D.N.Y. Oct. 24, 2007)); *see also Rice*, 917 F. Supp. at 20 ("The suggestion that defendant was without notice of a potential claim at the time it [destroyed evidence] is therefore simply implausible" despite the fact that at the time of destruction "there was no pending administrative claim, no litigation had been filed and there was no outstanding request from plaintiff's counsel for production of [the destroyed evidence]."). A duty to preserve evidence will arise upon the filing of an EEOC charge. *Zubulake v. UBS Warburg LLC*, 220 F.R.D 212, 216 (S.D.N.Y. 2003).

Here, as in *Zubulake*, the Defendant was put on notice of the possibility of litigation when Plaintiff filed her informal complaint of discrimination with the Library's Equal Employment Opportunity Complaints Office on July 17, 2003. Accordingly, the Defendant had a duty to preserve relevant documents as of July 17, 2003.[6] Nonetheless, the backup tapes

---

[5] Defendant cannot reasonably dispute that it had control over the evidence lost or destroyed as such evidence was on its e-mail servers, back-up tapes and in its merit selection files.

[6] Alternatively, even if the Plaintiff's filing of an informal complaint of discrimination were not enough to put Defendant on notice of the possibility of litigation (which it is) Defendant was also put on notice of its duty to preserve relevant documents in January and February 2004. The Library's Human Resources Office was aware of the complaint as of January 9, 2004 (one year and one day prior to the posting of this Position), Mr. Shroff was aware of the investigation in early 2004, and Ms. von Muhlenbrock filed here formal complaint on February 19,

containing electronic information relevant to Plaintiff's claims were destroyed *after* July 17, 2003. According to Library policy, documents generated between November 2002 and May 2003 (the time period in which Dr. Medina approved posting for the Position and Mr. Guerra was selected for the Position) would have been destroyed one year later – *i.e.*, between November 2003 and May 2004. Such information was also deleted from Ms. Nichols' e-mail accounts, and Mr. Shroff's e-mails only date back to March 2003.

### B. DEFENDANT DESTROYED RELEVANT EVIDENCE WITH A SUFFICIENTLY CULPABLE MIND.[7]

#### 1. DEFENDANT DESTROYED EVIDENCE WITH RECKLESS DISREGARD FOR ITS RELEVANCE.

"'[I]t is well-settled that a party's bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction' . . . . '"[B]ad faith' destruction or concealment" includes "both 'deliberate' destruction or concealment, and destruction or concealment with 'reckless disregard' for the relevance of the evidence.'" *Rice*, 917 F. Supp. at 19 (citing *Battocchi*, 581 A.2d at 765-66). Additionally, "'where the proffered evidence demonstrates that documents were concealed or destroyed in bad faith . . . a trial court may well abuse its discretion by refusing to allow factual inferences adverse to the culpable party to be suggested to the jury through an instruction or argument of counsel.'"[8] *Id.*

---

2004.

[7] Both the relevancy of the evidence and Defendant's culpable state of mind are addressed in this section.

[8] The court's holding is consistent with that of other courts which have held that a finding of intentional or reckless destruction creates a presumption of relevance. *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) ("It is a well-established and longstanding principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction."); *see also Zubulake v. UBS Warburg, LLC*, 229 F.R.D. 422, 436 (S.D.N.Y. 2004) ("Because [Defendant's] spoliation was willful, the lost information is presumed to be relevant."); *see also Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) ("When evidence is destroyed in bad faith (i.e., intentionally

The Defendant acted with reckless disregard and gross indifference for the relevance of the initial exchange of communication between the Selecting Official and Human Resources Staffing Specialist for the Position – generated on or around the same date that Plaintiff applied – regarding the basis for selecting applicants to interview for the Position, including an attachment containing, at the very least, applicant scoring information. Defendant, on notice of the relevance of this evidence to potential litigation as of July 17, 2003, failed to maintain these documents in its merit selection files, deleted these communications from the e-mail accounts of the author(s) and recipient(s), *and* destroyed the back-up tapes containing these communications in or around the end of January 2004. Such actions demonstrate a reckless disregard for the relevance of this evidence to Plaintiff's claims. As explained in *Rice* and *Battocchi*, because Defendant's actions evidence a reckless disregard for the relevance of the destroyed evidence to Plaintiff's claims, an adverse inference instruction is mandatory.

### 2. ALTERNATIVELY, DEFENDANT NEGLIGENTLY DESTROYED RELEVANT EVIDENCE.

"The rule that a fact-finder may draw an inference adverse to a party who fails to preserve relevant evidence within his exclusive control is well established in this jurisdiction." *Battocchi*, 581 A.2d at 766. "[This rule] derives from the common sense notion that if the evidence was favorable to the non-producing party's case, it would have taken pains to preserve and come forward with it.". Where the destruction or loss of evidence is not intentional or reckless, the court will consider "factors such as the degree of negligence or bad faith involved, the importance of the evidence involved, the importance of the evidence lost to the issues [at] hand, and the availability of other proof enabling the party deprived of the evidence to make the same point." *Rice*, 917 F. Supp. at 20 (citing *Battocchi*, 581 A.2d at 766-67).

---

or willfully), that fact alone is sufficient to demonstrate relevance.").

At the very least, the Defendant's actions evidence that its loss or destruction of relevant documents was negligent. That the three different sources for the relevant documents are *all* missing these communications evidences Defendant's degree of bad faith. As explained above, Defendant failed to maintain these documents in its merit selection files, deleted these communications from the e-mail accounts of the author(s) and recipient(s), *and* destroyed the back-up tapes containing these communications in or around the end of January 2004. Furthermore, the substance of communications and attachments between the Selecting Official and Human Resources regarding the basis for selecting applicants to interview for the Position are crucial to Plaintiff's claim. The basis upon which the Library selected applicants to interview for the Position goes to the very heart of Plaintiff's claim – that such basis was discriminatory. Finally, there is no substitute for this initial exchange of communication, which Mr. Shroff has claimed that he does not even remember.

## CONCLUSION

Accordingly, Plaintiff respectfully requests adverse inferences and monetary sanctions in the form of reasonable costs and attorneys fees incurred in bringing this motion.

Dated: June 13, 2008                                   Respectfully Submitted,

Paul S. Thaler (D.C. Bar No. 416614)
Kelly A. Schmidt (D.C. Bar No. 975232)
(not admitted in federal court)
THALER LIEBELER, LLP
1825 Eye Street, N.W.
Suite 400
Washington, DC 20006
*Attorneys for Plaintiff, Gisela von Muhlenbrock*